Louise PRIESS, Plaintiff,

v.

FISHERFOLK, et al., Defendants.

No. C–1–80–588.

United States District Court, S. D. Ohio, W. D.

April 2, 1982.

Jeffrey S. Creamer, Cincinnati, Ohio, for plaintiff.

Frederick J. McGavran, Samuel M. Allen, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge:

This case is before the Court on defendants' motion to dismiss or transfer (docs. 5, 7, 8, 33, 40). Plaintiff has filed an exhaustive memorandum in opposition (doc. 54) and defendants have filed memoranda in support (docs. 49, 50, 61, 62, 64).[1] Because the motions raise complex factual and legal issues involving multiple defendants from various jurisdictions, we will attempt to briefly outline the relevant history of this action.

I

At the heart of this complex inter-corporate and international case, is a relatively simple cause of action. In the late summer of 1977, plaintiff was a resident of the Community of Celebration, in Woodland, Colorado. The Community, one of twelve defendants in the present action, is an unincorporated association of individuals residing in Woodland for religious purposes. While a resident at defendant Woodland, plaintiff executed a document which revoked a trust and transferred the corpus to defendant Fisherfolk, Inc., a Colorado non-profit corporation. Plaintiff alleges that when executing the document of revocation and transfer, she was under duress, drugs and undue influence. Plaintiff continues that the deprivation of her free will was intentionally caused by defendants John Farra and Grover Newman, who at the time were officers of the defendant transferee Fisherfolk, Inc. and residents of defendant Woodland.

It is at precisely this point that the simplicity of the case ends and its complexity begins. In addition to Woodland, Fisherfolk, Inc., Woodland residents and Fisherfolk officers John Farra and Grover Newman, plaintiff has named eight additional organizations and corporations as defendants in this undue influence case. The remaining eight can be broken into two loose classifications, Colorado defendants and Scottish defendants. We will briefly describe each.

In addition to the four Colorado based defendants mentioned in our description of the operative facts of this case, plaintiff has named four more Colorado defendants.

Three of these are Colorado corporations on which defendants John Farra and Grover Newman served as officers. Fisher-

---

1. Counsel should, in the future, direct their attention to Rule 4:2, *A Uniform System of Citation*, (12th ed.) which provides in pertinent part:

    "*Supra*" and "hereinafter" should not be used in referring to cases, statutes, or similar material except in extraordinary circumstances.

    We are convinced that no extraordinary circumstances are present in this action save the volume and weight of the materials filed by counsel thus far.

man, Inc., is a Texas non-profit corporation located in Colorado which ran a mail order business until all corporate assets were transferred to defendant Fisherfolk, Inc. in September 1977. Fisherman, Inc. is now a wholly owned subsidiary of defendant Fisherfolk, Inc. Net Colorado, Inc. is a Colorado profit corporation engaged in a mail order business. Net Colorado is a wholly owned subsidiary of defendant Fisherfolk, Inc. Community of Celebration, Inc. is a non-profit Colorado corporation organized to hold the assets of defendant Woodland's residents. Community of Celebration, Inc., has been inactive since transferring all of its assets to defendant Fisherfolk, Inc. in 1977.

The remaining Colorado defendant is the Episcopalian Diocese of Colorado which recognized the defendant Woodland Community as a "special congregation or ministry."

The plaintiff also named four Scottish organizations which share the same religious ideas and purposes as the Colorado defendants. Celebration Services International is a Scottish profit corporation which sells baked goods, music and recordings. Celebration Services International entered into a licensing agreement with defendant Fisherman, Inc. for the marketing of religious music and recordings. In addition, it transferred a 75% ownership interest in a Texas corporation to Fisherfolk, Inc. Celebration Services International maintains a bank account in Colorado. Defendant John Farra is an authorized signatory on the account. The Community of Celebration, Millport is an unincorporated association of individuals living together in a religious "revival" community. Celebration Housing Association, LTD., is a Scottish corporation organized to provide housing for the residents of the defendant Millport community. Finally, the Community of Celebration Christian Trust is a nonprofit Scottish trust created to provide support for the residents of the defendant Millport community.

## II

Plaintiff claims that this Court has personal jurisdiction over the defendants under the Ohio Long Arm Statute. Ohio Revised Code § 2307.382. In construing this statute, the Sixth Circuit has concluded that the Ohio legislature intended to extend the jurisdiction of Ohio courts to the constitutional limits of personal jurisdiction. *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (1972). Plaintiff contends that the Court can assert personal jurisdiction properly under three different sections of the Ohio Long Arm Statute. Ohio Revised Code § 2307.382 provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(3) Causing tortious injury by an act or omission in this state;

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

When states exercise personal jurisdiction over non-resident defendants, due process, the constitutional limitations on personal jurisdiction, requires that the defendant have sufficient minimum contacts with the forum state so that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

The Sixth Circuit has developed an analytical approach to the application of Ohio Revised Code § 2307.382 which is consistent with the due process limitations of *International Shoe*. First, the defendant must purposely avail himself of the privilege of acting in the forum state or of causing a consequence in the forum state. Next, the cause of action must arise from the defendants contact with the forum state. Third, the defendants activities or consequences

caused by defendant must have a sufficient impact on the forum state so that the exercise of jurisdiction is reasonable. *In-Flight Devices Corporation v. Van Dusen Air, Inc.*, 466 F.2d 220, 226 (6th Cir. 1972) citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The first or "purposeful action" requirement is designed to prevent courts from exercising jurisdiction over non-resident defendants who could not have reasonably foreseen that their acts would have consequences in the forum state. It offends the traditional notions of "fair play and substantial justice" to permit the plaintiff's unilateral activities within the forum to serve as the basis for asserting jurisdiction over the unknowing or unsuspecting defendant. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

In applying the "purposeful action" requirement to the jurisdiction basis provided in Ohio Revised Code § 2307.382(A)(1) ("transacting any business in this state"), the Sixth Circuit has held that a person "transacts business" in Ohio if the business operations set in motion by the defendant have a "realistic impact" on Ohio commerce. Further, a defendant transacts business "purposefully" if the defendant should have reasonably foreseen that the transaction would have an impact within the forum state. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 221, 226 (6th Cir. 1972) citing *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 382–83 (6th Cir. 1968).

Sections 2307.382(A)(3) and (A)(4) rarely present analytical problems under the "purposeful action" requirement. If the defendant commits a tortious act or omission within Ohio, he would of necessity have purposely availed himself of the privilege of being in Ohio. Similarly if a defendant causes a "tortious injury in this state" by an act or omission outside Ohio, and either engages in a persistent course of conduct in Ohio or regularly solicits business in Ohio, such a defendant cannot contend that he did not "purposely avail" himself of the privilege of conducting activities in Ohio.

The second requirement for establishing personal jurisdiction is that the plaintiff's cause of action must arise from the defendant's contacts with Ohio. Ohio Revised Code § 2307.382(B) provides:

When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this action may be asserted against him.

Although the "arising from" requirement is specified by statute, the Sixth Circuit believes that due process also demands this connection *In-Flight*, 466 F.2d at 220 n.15.

When the "arising from" test is applied in cases where jurisdiction is sought under § 2307.382 ("transacting any business in this state"), the Court considers whether the cause of action bears an "intimate relationship" to the business transaction. Put another way, the Court determines whether defendant's transaction of business is the "very soil" from which the cause of action grew. *In-Flight Devices*, 466 F.2d at 229, *Garrett v. Ruth Originals*, 456 F.Supp. 376, 381 (S.D.Ohio 1978).

The last step of the *In-Flight Devices* approach requires the Court to determine the reasonableness of asserting jurisdiction over the defendant in the chosen forum. The *In-Flight Devices* court emphasized that this demands a flexible analysis; courts are without a general standard to determine what is fair and reasonable or what is unfair and unreasonable. *In-Flight Devices* at 232. Among the factors the Court should consider are the nature and frequency of the defendants' contacts with the forum, whether defendant is justifiably "surprised" when forced to litigate in a distant forum, defendant's financial ability to litigate in a distant forum, any inconvenience which might interfere with the ability to present an effective defense, the forum state's interest in adjudicating the dispute, and the prevention of unwarranted encroachment on the sovereignty of the non-forum states. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–94, 100 S.Ct. 559, 564–565, 62 L.Ed.2d 490 (1980); *Noel v. S. S. Kresge Co.*, 669 F.2d 1150 (6th Cir. 1982); *In-Flight Devices Corp. v. Van*

*Dusen Air, Inc.,* 466 F.2d 220, 232–36 (6th Cir. 1972); *Garrett v. Ruth Originals Corp.,* 456 F.Supp. 376, 382 (S.D.Ohio 1978).

It is well settled in this Circuit that the plaintiff bears the burden of establishing personal jurisdiction over each defendant by a preponderance of the evidence. *Weller v. Cromwell,* 504 F.2d 927 (6th Cir. 1974). Should the Court attempt to decide the jurisdictional issue solely on the basis of written material, plaintiff must establish a *prima facie* case of *in personam* jurisdiction, *i.e.,* demonstrate facts sufficient to support a finding of personal jurisdiction. *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir. 1980) citing *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977).

A preponderance of the evidence burden is not imposed in situations, such as the case at bar, where the court considers only affidavits and discovery materials. Were a preponderance standard imposed, the Court would be forced to grant the motion to dismiss whenever the defendant controverts the plaintiff's facts with his own affidavits and discovery materials. If the memoranda, affidavits and discovery materials present disputed issues of credibility and fact concerning personal jurisdiction, the Court should deny the motion to dismiss and hold an evidentiary hearing on the controverted issues. *Welsh v. Gibbs,* 631 F.2d 436, 439 (6th Cir. 1980); *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285 (9th Cir. 1977). At the evidentiary hearing, the plaintiff bears the burden of establishing *in personam* jurisdiction by a preponderance of the evidence. Although this limited evidentiary hearing may be held prior to trial, Fed.R.Civ.P. 12(d) provides that the Court may take evidence on the jurisdictional issue at trial. Delaying evidence on the jurisdictional issue until trial is appropriate where the jurisdictional facts are intertwined with the merits of the case. *Data Disc, Inc. v. Systems Technology Associates, Inc.,* 557 F.2d 1280, 1285–86 n.2, (9th Cir. 1977); *Spector v. LQ Motor Inns, Inc.,* 517 F.2d 278, 284 (5th Cir. 1975) (subject matter jurisdiction);

*Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir. 1965) (jurisdictional amount in diversity case). This procedure avoids the risk of prejudicing plaintiff's case on the merits by allowing plaintiff to present his case in an orderly fashion.

### III

The motions to dismiss for lack of subject matter jurisdiction are before the Court on the basis of written materials. In accordance with the Sixth Circuit's *Welsh* decision, the plaintiff must establish a *prima facie* case of jurisdiction as to each defendant. If we find that the plaintiff has produced facts sufficient to support a finding of personal jurisdiction we shall conclude that the particular defendant is, at this state of the proceedings, properly before the Court. If, however, we find that the plaintiff has demonstrated by a preponderance of the evidence that any given defendant is subject to the jurisdiction of this Court, we will conclusively rule on the jurisdictional issue at this time. Should it appear to this Court that the plaintiff has established a *prima facie* case but that the documents before the Court raise disputed issues of fact or credibility, we will determine the propriety of a further evidentiary hearing on those disputed jurisdictional issues.

Defendants John Farra and Grover Newman first had contact with Ohio in the fall of 1976. Defendants came from Colorado to Cincinnati to visit plaintiff's church and meet with plaintiff's congregation. During this visit defendants Farra and Newman discussed the lifestyle of the residents at the Woodland Community.

Subsequent to the first visit, defendant Farra made regular phone calls to Cincinnati. Defendant Farra spoke with Reverend Shuler, minister of the Terrace Park Community, about the problems and the activities of the two Communities. Reverend Shuler related the substance of these calls to plaintiff and other Terrace Park Community members.

Defendants Farra and Newman visited Terrace Park again in early 1977. Later, in the spring of 1977, defendant Farra extended an invitation to the Terrace Park Community to join the Woodland Community. Defendant Farra extended the invitation to Reverand Shuler while both were attending a revival meeting in Michigan. The details of the Terrace Park Community's move to Colorado subsequently were arranged through telephone calls placed into Ohio by defendants Farra and Newman.

When plaintiff revoked the Ohio-based trust fund, defendant Farra drafted the document of revocation. In addition, after the plaintiff became disenchanted with the Colorado Community and returned to Cincinnati, defendants Farra and Newman continued to send personal correspondence to plaintiff.

Based on these contacts with the forum state, this Court believes that defendants Farra and Newman have "transacted business" in Ohio within the meaning of Ohio Revised Code § 2307.382(A)(1). Defendants Farra and Newman have purposefully availed themselves of the privilege of conducting activities in Ohio. The record indicates that both Farra and Newman actively pursued the business of the Colorado-based ministry in Ohio. The visits and telephone calls which lead to Farra's invitation all demonstrate the defendants' intentional involvement with Ohio.

An application of the *In-Flight Devices* standard also leads to the conclusion that defendants Farra and Newman purposefully availed themselves of the privilege conducting activities within Ohio. Defendants Farra and Newman cannot contend that the occurrences set in motion by their Ohio contacts did not have a "realistic impact" on Ohio. The visits to Ohio and the subsequent telephone calls to iron out the details of the move resulted in the uprooting of the Terrace Park Community. Ohio lost not only the Community residents, but their assets as well. Moreover, defendants Farra and Newman acted "purposefully" in that they could reasonably foresee the impact that their Ohio contacts, made in further-

ance of the ministry, caused. Moreover, when preparing the document of revocation, defendant Farra should have foreseen the impact caused by the transfer of $350,-000 to Colorado. For these reasons, plaintiff has established by a preponderance of the evidence that defendants Farra and Newman purposefully availed themselves of the privilege of conducting activities within Ohio.

This Court also believes that plaintiff has established, by a preponderance of the evidence, that plaintiff's cause of action "arose out of" defendants Farra's and Newman's contacts with Ohio. Defendants contend that because the alleged acts of undue influence occurred in Colorado, plaintiff's cause of action could not have arisen from the Ohio contacts of defendants Farra and Newman. Defendants' argument reflects an improperly narrow understanding of the second *In-Flight Devices* requirement. Under *In-Flight Devices*, the operative facts of the case must bear a direct relationship to the defendant's contacts with the forum state. The Sixth Circuit does not require, as the defendants would, that the operative facts actually occur within the forum state. Hence, an alleged breach of employment contract in New York was related sufficiently to the defendants contacts with Ohio in negotiating the terms of the agreement. *Garrett v. Ruth Originals*, 456 F.Supp. 376 (S.D.Ohio 1978). Similarly, this Court has held that the allegedly negligent acts of the defendant in the West Indies arose out of defendant's contacts with Ohio in employing an independent Ohio agent to sell cruise tickets to the plaintiffs. *Pfeiffer v. Cunard Lines, Ltd.*, No. C–1–80–38 (S.D.Ohio, Nov. 18, 1980) (order denying motion to dismiss).

Plaintiff's cause of action is directly related to the Ohio contacts of defendants Farra and Newman. The sequence of events involving plaintiff's decision to leave her home in Ohio and transfer her worldly possessions to Fisherfolk, Inc. was initiated by the Ohio contacts of defendants Farra and Newman. The relationship between plaintiff's Ohio Community and the Colorado group grew as a result of defendants

Farra's and Newman's Ohio visits and regular phone calls. Moreover, it was defendant Farra who invited plaintiff to become a part of the Colorado Community and join in the revival lifestyle. Thus, this Court concludes consistently with *In-Flight Devices* and *Garrett* that the Ohio contacts of defendants Farra and Newman are the "very soil" from which plaintiff's action for undue influence grew. *In-Flight Devices*, 466 F.2d at 229, *Garrett* 456 F.Supp. at 391.

In addition to concluding that the plaintiff's cause of action arose from the Ohio contacts of defendants Farra and Newman and that they purposefully availed themselves of the privilege of conducting activities in Ohio, we believe that the exercise of personal jurisdiction over defendants Farra and Newman is reasonable. In reaching this conclusion, this Court finds that a variety of considerations weigh heavily in favor of finding of reasonableness.

Foremost among these is the interest of the forum state in the present dispute. Ohio has an obvious interest in resolving a suit brought by one of its residents. *In-Flight Devices*, 466 F.2d at 232. Moreover, this action involves a substantial amount of property that was formerly located in Ohio and allegedly was transferred improperly to Colorado. The State of Ohio has a substantial interest in protecting the property rights of its residents against unlawful appropriation.

Among the other facts considered by this Court is that defendants Farra and Newman initiated their contacts with Ohio. It was defendants Farra and Newman and the residents of Woodland who desired the presence of plaintiff and her friends in Colorado. We cannot overemphasize the significance of the undisputed fact that defendant Farra extended the invitation. Moreover, in light of the intentional nature of defendants Farra's and Newman's contacts with Ohio, and their knowledge of the transfer of substantial assets from Ohio to the Community, defendants Farra and Newman cannot realistically claim to be "surprised" by the initiation of legal proceedings in Ohio. Although it is never a necessary consequence, whenever one prompts the relocation of a substantial amount of people and property, the possibility of some type of legal proceeding is certainly foreseeable.

Based on the considerations detailed above, we find that the plaintiff has demonstrated the existence of *in personam* jurisdiction over the defendants Farra and Newman by a preponderance of the evidence and that they are properly before the Court on this matter. *Welsh v. Gibbs*, 631 F.2d 436 (6th Cir. 1980). The motions of defendants Farra and Newman to dismiss for lack of personal jurisdiction are hereby denied.

We cannot, however, rule that plaintiff has established jurisdiction over the remaining defendants by a preponderance of the evidence. Nevertheless, because we must decide the motions to dismiss solely on the basis of written materials, the plaintiff need not bear so onerous an evidentiary burden at this stage of the lawsuit. Because the defendant has demonstrated facts sufficient to support a finding as to each of the remaining defendants, we find that a *prima facie* case of personal jurisdiction is established. Our denial of the remaining motions to dismiss is not, however, a conclusive finding of personal jurisdiction. The written materials submitted by the parties have raised disputed issues of both credibility and fact which we must resolve before this Court can render a final determination on the existence of personal jurisdiction over the remaining ten defendants. For this reason, we order that a further evidentiary hearing will be held wherein the plaintiff must demonstrate the propriety of exercising jurisdiction over each defendant by a preponderance of the evidence. *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980); *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Plaintiff contends that the activities and contacts of five Colorado defendants are attributable to defendants Farra and Newman on an "alter ego" theory. The "alter ego" defendants consist of all the remaining Colorado defendants with the exception of the Diocese of Colorado. Each of these defendants has had some degree of contact with the State of Ohio.

Rather than attempt to establish jurisdiction over these defendants on the basis of the *In-Flight Devices* standard, plaintiff argues that each of the distinct legal entities is actually an extension of defendants Farra and Newman. Plaintiff theorizes that the activities and contacts of the entities are attributable to defendants Farra and Newman because they exercised such extensive control over the entities that Farra and Newman completely dominated their day-to-day operations. In support of this theory, plaintiff notes that defendants Farra and Newman were either officers or directors of the defendants in question. In addition, plaintiff has offered affidavits from former residents of the Colorado Community which tend to substantiate the claims of extensive control and domination.

In the past, this Court has not hesitated to disregard the corporate fiction when addressing jurisdictional issues. *See, e.g., Central Investment Corp. v. Mutual Leasing Associates, Inc.*, 523 F.Supp. 74 (S.D. Ohio 1981) (order denying motion to dismiss). In *Central Investment* we held that "piercing the corporate veil" for jurisdictional purposes is appropriate where the individual defendants have:

1. Exercised such complete domination and control that the entity has no separate mind, will or existence of its own;

2. Used the domination to commit a wrongful or dishonest act;

3. Plaintiff, as a result of the defendant's control and commission of a wrongful act, has suffered an unjust loss.

*Central Investment* at 78, citing *Bucyrus Erie Co. v. General Products Corp.*, 643 F.2d 413, 418 (6th Cir. 1981).

Plaintiff has, on the basis of the pleadings and written materials submitted to the Court, demonstrated a *prima facie* case that the application of the alter-ego theory is warranted. Plaintiff offered evidence substantiating the domination and control which defendants Farra and Newman exercised over the Colorado defendants. In addition, plaintiff contends that this control was used to secure a wrongful appropriation of her property. Finally, plaintiff asserts that she suffered an unjust loss of some \$350,000 as a result of the wrong allegedly committed by defendants Farra and Newman.

We do not overlook, however, the evidence submitted by the defendants in support of their motion to dismiss. The defendants have offered evidence that no wrongful act was committed. Moreover, the defendants have substantiated their contention that defendants Farra and Newman did not in fact dominate or extensively control the defendants in question. Nevertheless, because the plaintiff has presented a *prima facie* case we must at this point deny the motions to dismiss the Colorado defendants until further evidence is heard on the matter. As we noted previously, such action is warranted where the written materials raise disputed issues of credibility and fact. *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980); *Data Disc. Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 (9th Cir. 1977).

Plaintiff contends that this Court can assert personal jurisdiction over the four Scottish defendants because they, along with the Colorado defendants, constitute a "single functional entity." In support of this theory, plaintiff has submitted evidence that the Scottish defendants viewed the Colorado defendants as "departments" within the international Fisherfolk organization. This evidence consists of deposition testimony, corporate minutes and Fisherfolk publications. Further, plaintiff has produced evidence that the Colorado and Scottish defendants share common objectives, common directors and management committees, and common resources. In addition, plaintiff submitted evidence that the Scottish and Colorado defendants deliberately created the appearance of unity by using common names and logos. Most importantly, plaintiff offered some evidence that the Scottish defendants controlled the operations of the Colorado defendants.

Defendants have submitted evidence that substantiates their contention that the Scot-

tish and Colorado defendants are not a single functional entity. Although they admit common religious beliefs, defendants maintain that the Scottish defendants do not control the operations of the Colorado defendants. Submission of this evidence has created yet another disputed issue of credibility and fact. Because the plaintiff has demonstrated a *prima facie* case of jurisdiction over the Scottish defendants under the single functional entity theory, we must deny the foreign defendants' motion to dismiss until an evidentiary hearing is held. At this hearing, plaintiff must establish the existence of personal jurisdiction over the foreign defendants by preponderance of the evidence. *Welsh v. Gibbs*, 631 F.2d 436, 438–39 (6th Cir. 1980); *Data Disc, Inc. v. Systems Technology Associates*, 557 F.2d 1280, 1285 (9th Cir. 1977).

◼ Plaintiff maintains that this Court can exercise personal jurisdiction over the defendant Diocese of Colorado on an agency theory. Plaintiff claims that the defendant Community of Celebration, Woodland, was in an agency-principal relationship with the defendant Diocese of Colorado.

The accepted definition of agency in Ohio is:

A relationship which resulted from some manifestation of consent by one person to another—the agent—that the latter shall act in the former's behalf and subject to his control.

3 O.Jur.3d *Agency* § 1. The most important element in determining whether an agency exists is the presence of some control over the conduct of the agent. *Arnson v. General Motors Corporation*, 377 F.Supp. 209, 213 (N.D.Ohio 1977).

Based on an application of this definition, we believe that the plaintiff has established *prima facie* case of an agency relationship between the Diocese and the Colorado Community. Plaintiff has noted that the Community was recognized by the defendant Diocese as a "Special Ministry." Plaintiff has submitted evidence that such ministries are subject to Canons 20 and 21 of the Diocese. These Canons purportedly establish the control of the Diocese over the

day-to-day operation of the ministry. Further, plaintiff has pointed to numerous descriptions of Diocesan authority made by Bishop Frey. These descriptions tend to substantiate plaintiff's contention that the Diocese had an extensive right of control.

The defendant Diocese, however, articulately contests the existence of a degree of control which is sufficient to create an agency relationship. Despite the persuasiveness of the defendant Diocese's presentation, this Court must conclude that the memoranda, affidavits and exhibits present disputed issues of fact and credibility. Before we can conclusively rule on the existence of this relationship and the propriety of exercising personal jurisdiction, the Court must hold an evidentiary hearing on the issue. For these reasons, we find that the plaintiff has established a *prima facie* case of personal jurisdiction over the defendant Diocese of Colorado. The motion of the defendant Diocese to dismiss for lack of personal jurisdiction is, therefor, denied.

IV

◼ The defendants have also filed a motion, pursuant to 28 U.S.C. § 1404(a), to transfer this case to the United States District Court for the District of Colorado. When ruling on transfer motions, this Court employs the balancing approach developed by Judge Porter in *Artisan Development v. Mountain States Development Corp.*, 402 F.Supp. 1312 (S.D.Ohio 1975). Under this approach, the Court considers a variety of factors including the convenience of the witnesses, where the operative facts occurred, location of documentary evidence, and the possibility of prejudice in either the forum or transfer state. The Court must give foremost consideration to the plaintiff's choice of forum, and the balance must weigh "strongly in favor of a transfer" before the Court should grant a § 1404(a) motion. *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951); *Artisan Development v. Mountain States Development Corp.*, 402 F.Supp. 1312 (S.D.Ohio 1975).

◼ After a careful consideration of these factors, we cannot conclude that the

balance weighs strongly in favor of transfer. Plaintiff is a resident of Ohio and her choice to proceed with the suit in her home state cannot be overemphasized. *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951). The defendants, however, claim that a large amount of their Colorado-based witnesses would be inconvenienced by an Ohio trial. Nevertheless, the plaintiff has also demonstrated that many of her most important witnesses would be equally inconvenienced by a Colorado trial. Although the operative facts did occur in Colorado and much of the documentary evidence concerning the defendants is located in Colorado and Scotland, these facts do not, in this Court's opinion, tip the balance strongly in favor of transfer. Accordingly, we rule that the interests of justice dictate that this action remain in the present forum.

Because we have yet to conclusively decide the personal jurisdiction issue relating to each defendant other than defendants Farra and Newman, we must hold a special evidentiary hearing on this question. We believe that the most appropriate time for this hearing would be a date following the trial on the merits of the lawsuit. The question of whether the plaintiff revoked the trust while under the undue influence of defendants Farra and Newman is a relatively simple one to try. On the other hand, determining which parties are subject to the jurisdiction of this Court, and which are accountable for the wrongful acts, if any, of defendants Farra and Newman, presents complex issues of law and fact.

Accordingly, the motions to transfer are denied. The motions of defendants Farra and Newman to dismiss for lack of personal jurisdiction are denied. Finally, the motions of the eleven remaining defendants to dismiss for lack of personal jurisdiction are denied and may be renewed after the upcoming evidentiary hearing on that issue.

SO ORDERED.