**Joyce SMITH, et al., Plaintiffs,**

v.

**GAF CORPORATION, et al., Defendants.**

**No. C–1–82–1293.**

United States District Court, S.D. Ohio, W.D.

April 26, 1984.

---

Fredric F. Tilton, Cincinnati, Ohio, for plaintiffs; Thomas W. Henderson, Pittsburgh, Pa., of counsel.

John H. Burtch, Columbus, Ohio, William G. Compton, Dayton, Ohio, Ralph F. Mitchell, Gordon C. Greene, James F. Brockman, Cincinnati, Ohio, for defendants.

## OPINION AND ORDER

SPIEGEL, District Judge.

This case is before the Court on a motion by defendant, Asbestos Corporation Limited (ACL), to dismiss for want of *in personam* jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(2). Plaintiff's complaint against ACL alleges that ACL mined and processed asbestos fiber which was sold and shipped to the Celotex Corporation of Lockland, Ohio and, as a result, plaintiff's decedent, an employee of Celotex, was exposed to these asbestos fibers. Plaintiff alleges that this exposure ultimately resulted in development of asbestosis and then lung cancer which caused the death of plaintiff's husband.

ACL, a Canadian corporation with its principal place of business in Montreal, is engaged in the business of mining raw asbestos fiber. Defendant states that it is neither incorporated nor registered to do business in Ohio and has never authorized an agent to accept process in Ohio. Fur-

ther, ACL has no offices, employees, real or personal property or bank accounts in the state of Ohio.

It is well-settled that, subject to the requirements of the due process clause of the Fourteenth Amendment, federal courts in diversity actions must look to the applicable state law to determine the extent of their personal jurisdiction. *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Poyner v. Erma Werke G.m.b.H.*, 618 F.2d 1186 (6th Cir.1980). Both plaintiff and defendant argue that Ohio law is controlling in this diversity matter and, therefore, plaintiff must establish jurisdiction under Ohio Rev.Code § 2307.382. Plaintiff has asserted two bases for jurisdiction under this section. First, that jurisdiction is proper because ACL caused tortious injury in this state and ACL regularly solicits business or derives substantial revenue from goods used in this state. Second, that jurisdiction is proper because ACL caused injury by breach of warranty made in the sale of goods and ACL might have reasonably expected the goods to be used in this state.

The Ohio statute provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as a cause of action arising from the persons':

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(5) Causing injury in this state to any person by breach of warranty expressly or impliedly made in the sale of goods outside this state when he might reasonably have expected such person to use, consume, or be affected by the goods in this state, provided that he also regularly does or solicits business, or engages in any other persistent course of conduct, or de-

rives substantial revenue from goods used or consumed or service rendered in this state.

In construing the Ohio long arm statute, the Sixth Circuit has concluded that the Ohio legislature intended to extend the jurisdiction of Ohio courts to the constitutional limit of personal jurisdiction. *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972); *Priess v. Fisherfolk*, 535 F.Supp. 1271, 1273 (S.D.Ohio 1982). The Supreme Court has determined that this constitutional limitation is the requirement that the defendant have sufficient minimum contacts with the forum state so that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The Sixth Circuit has developed a three-pronged approach to establish whether this minimum contacts requirement has been met. First, the defendant must purposely avail himself of the privilege of acting in the forum state or of causing a consequence in the forum state. Next, the cause of action must arise from the defendant's contact with the forum state. Finally, the defendant's activities or the consequences of those activities must have a sufficient impact on the forum state so that the exercise of jurisdiction is reasonable. *In-Flight Devices*, 466 F.2d at 220, 226; *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968). By considering the minimum contacts test in light of the specific requirements of the Ohio statute, it is possible to analyze the facts of the instant case to determine whether jurisdiction is proper.

■ The first prong of the test requires the Court to ascertain whether the defendant has purposely availed itself of the privilege of doing business within the forum state. In this case, ACL clearly has. Although the defendant has denied any physical presence in Ohio, it is clear that physical presence is not necessary for jurisdiction. *Southern Machine Co.*, 401 F.2d at 374, 382. The purpose behind applying this "purposeful action" requirement is to avoid the situation where the unilateral activity of the plaintiff forces an unsuspecting defendant into a foreign forum. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Jurisdiction may be exercised under Ohio Rev.Code § 2307.-382(A)(4) or (5) if the defendant regularly does or solicits business within the state or derives substantial revenue from the services rendered there. This Court has held that applying the "purposeful action" requirement to the Ohio long-arm requirements rarely presents analytical problems because, if a defendant either engages in a persistent course of conduct in Ohio or regularly solicits business in Ohio, such a defendant cannot contend that he did not "purposely avail" himself of the privilege of conducting activities in Ohio. *Priess*, 535 F.Supp. at 1271, 1274.

The Court has before it numerous documents covering the period between 1955 and 1980 that show significant sales of asbestos fiber by the defendant to the Celotex Corporation or its predecessor-in-interest, Philip Carey Manufacturing Company. Both concerns had manufacturing plants in Lockland, Ohio. Clearly, defendant regularly solicited business in Ohio, notwithstanding that the shipments were sold F.O.B. Quebec. The record also shows that for at least these twenty-five years, ACL contracted and communicated directly with the Celotex Corporation or its predecessor-in-interest at their Cincinnati, Ohio offices. These communications demonstrate ACL's regular solicitation of business in Ohio. Although, the record also indicates that the revenue ACL received from the shipments of asbestos to Celotex was not insubstantial, we need not consider that here. The section's elements are in the alternative and all need not be proven to establish jurisdiction.

■ The second requirement, which originated in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), is that the plaintiff's cause of

action must arise from defendant's contacts with Ohio. Plaintiff's cause of action arose from her decedent's exposure to asbestos fibers which were mined and sold by the defendants, ACL to the decedent's employer in Lockland, Ohio. It is plain that defendant's alleged liability is connected with or arise out of the sale of asbestos for use in Ohio.

■ The third prong of the test takes into consideration "fair play and substantial justice." This step requires the Court to determine whether it is reasonable to assert jurisdiction over the defendant in this forum. One component of this requirement is the forum state's interest in the present dispute. Ohio has an obvious interest in resolving a suit brought by one of its residents. *Keeton v. Hustler Magazine,* — U.S. —, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984); *Priess,* 535 F.Supp. at 1277; *In-Flight Devices,* 466 F.2d at 232. Moreover, modern transportation and communication have made it economically feasible and much less burdensome for a defendant corporation to defend itself in a state where it engages in economic activity. *Poyner,* 618 F.2d at 1192. Once again, we emphasize the long, continuous relationship between ACL and Celotex and its predecessors-in-interest over a course of twenty-five years to establish the reasonableness of exercising personal jurisdiction over ACL. In *In-Flight Devices* the Court emphasized that no type of physical contact is required as a jurisdictional prerequisite. The Court stated, "A letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant." 466 F.2d at 235. Therefore, we conclude that after voluntarily engaging in commerce in Ohio, it is not beyond reasonable expectations that the defendant be required to submit to this Court's jurisdiction. *See Calder v. Jones,* — U.S. —, 104 S.Ct. 1482, 1486, 79 L.Ed.2d 804 (1984); *World-Wide Volkswagen,* 444 U.S. at 286, 100 S.Ct. at 559; *Pfieffer v. Cunard Lines Ltd.,* No. C-1-80-38 (S.D.Ohio Nov. 18, 1980).

Defendant has directed our attention to two recent decisions from the United States District Court of the Northern District of Ohio in which ACL was dismissed as a defendant. The first case, *Euler v. Johns-Manville Sales Corp.,* No. C81-439 (N.D.Ohio Aug. 13, 1982), is clearly distinguishable. In *Euhler* the Court held that nothing in the record indicated that ACL had targeted Ohio for its product. The Court cited *World-Wide Volkswagen* for the proposition that mere likelihood that a product will enter the forum state is not enough to establish minimum contacts. The plaintiff must show that defendant's conduct and connection are such that it should "reasonably anticipate" being haled into Court. *Euhler,* slip op. at 10 (citing *World-Wide Volkswagen,* 444 U.S. at 296, 100 S.Ct. at 566). However, this Court has before it a record which indicates that ACL had indeed targeted Ohio for its product as distinguished from the situation in *World-Wide.* In *World-Wide* the only connection that the sellers had with the forum state was the fact that an accident which involved the automobile sold by them in New York occurred there. The presence of the car in the forum state was clearly fortuitous. Conversely, this Court has substantial evidence which supports the assertion that the possibility of being haled into Ohio court should have been reasonably anticipated by ACL and the presence of asbestos in Ohio was not fortuitous but as a result of a direct sale to a corporation based in Lockland, Ohio. As to *Beamer v. Nutuin Corp.,* No. C-1-81-754 (N.D.Ohio 1983), the Court relied solely on the *Euhler* decision and the opinion was such a summary disposition that we cannot rely on it for our decision.

We conclude, therefore, that defendant's voluntary commerce within this state satisfies the minimum requirements of Ohio's long arm statute and the due process requirements of the Fourteenth Amendment. Accordingly, the motion of defendant to dismiss for lack of personal jurisdiction is denied.

SO ORDERED.