## CINCINNATI MILACRON INDUSTRIES, INC.

v.

## AQUA DYNE, INC.

No. C–1–84–426.

United States District Court,
S.D. Ohio, W.D.

Aug. 24, 1984.

Donald E. Schneider, Cincinnati, Ohio, for plaintiff.

Ronald J. Goodman, Cincinnati, Ohio, Shelley Prashner, Houston, Tex., for defendant.

## ORDER DENYING DEFENDANT'S MOTION FOR CHANGE OF VENUE AND MOTION TO DISMISS

CARL B. RUBIN, Chief Judge.

This diversity matter is before the Court pursuant to the *Motion for Change of Venue* (doc. no. 5) and Motion to Dismiss (doc. no. 6) filed by the defendant and opposed by plaintiff (doc. no. 7). For the following reasons, the motions are denied.

Cincinnati Milacron Industries, Inc. ("Milacron") purchased a water pump from the defendant Aqua-Dyne, Inc. ("AQD") as part of Milacron's contractual obligations to supply a cleaning system for the Army's armored tanks. AQD is engaged in the business of manufacturing high pressure hydro-blasting equipment. On January 3, 1983, AQD shipped the first pump to the defendant in Lebanon, Ohio but the parties later agreed that the pump failed to meet the Army's specifications. Consequently, a second pump with a higher capacity was shipped to Milacron as a loan but it also proved inadequate and Milacron demanded the return of the purchase price it had paid for the first pump. On January 17, 1984, AQD requested the return of the loaned pump.

On February 6, 1984, AQD filed suit against Cincinnati Milacron Marketing Company, Inc. ("Marketing Company") in a Texas district court. In that suit, AQD sued for the return of the second pump and equitable relief. Although the second pump was eventually returned to the plaintiff, AQD still asserts a claim for monetary damages against the Marketing Company. Milacron commenced the present action on February 14, 1984, in the Court of Common Pleas, Hamilton County, Ohio for breach of contract and breach of warranty; the case was later removed to this federal district court.

### A. Subject Matter Jurisdiction

The defendant argues that the matter should be dismissed for lack of subject matter jurisdiction because plaintiff's complaint asserts claims which arise out of the same transaction or occurrence as that stated in the Texas action filed on February 6, 1984.

■ Rule 13(a) states in part:

A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction....

Fed.R.Civ.P. 13(a). It is undisputed that AQD filed suit on February 6, 1984 in Texas against the Cincinnati Milacron Marketing Company and served the registered agent for that company. Cincinnati Milacron Industries, Inc. is not a party to the Texas lawsuit. Plaintiff does not challenge the fact that Cincinnati Milacron Industries, Inc. is a separate corporate entity from Milacron Marketing Company. (Doc. No. 7 at Exhibit B). Under Rule 13(a), the filing of a compulsory counterclaim is permitted only against opposing parties. Fed. R.Civ.P. 13(a). Because Cincinnati Milacron Industries, Inc. is not a party to the Texas litigation, it is not within the scope of Rule 13. *First National Bank v. Johnson County National Bank & Trust Co.,* 331 F.2d 325, 328 (10th Cir.1964); *Chemetron Corp. v. Certantes,* 92 F.R.D. 26, 28 (D.P.R.1981); *Morris, Wheeler & Co. v. Rust Engineering Co.,* 4 F.R.D. 307, 308–309 (D.Del.1945).

### B. Personal Jurisdiction

■ The second argument of the defendant is that the Court lacks personal jurisdiction over it. The burden of establishing personal jurisdiction is on the plaintiff. *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980). When the parties have provided written materials to the Court, the plain-

tiff's burden "is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Id.* at 439, *quoting, Poston v. American President Lines, Ltd.*, 452 F.Supp. 568, 571 (S.D.Fla.1978). However, if the affidavits yield no material dispute, as in the case at bar, jurisdiction may be determined as a matter of law and the plaintiff bears the burden of preponderance of the evidence. *Armbruster v. Quinn*, 711 F.2d 1332, 1335 (6th Cir.1983); *First National Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1125 (6th Cir.1982); *Priess v. Fisherfolk*, 535 F.Supp. 1271, 1275 (S.D. Ohio 1982).

■ In diversity actions, the district court must apply the law of the forum state, subject to due process limitations, to determine if it may exercise personal jurisdiction over a nonresident defendant. *National Can Corp. v. K Beverage Co.*, 674 F.2d 1134, 1136 (6th Cir.1982); *In-Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 224 (6th Cir.1972). This Court must decide first, whether the Ohio long-arm statute authorizes jurisdiction over the nonresident defendant, and second, whether this jurisdictional reach is constitutional. *National Can Corp.*, 674 F.2d at 1136; *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.*, 8 Ohio App.3d 236, 236, 456 N.E.2d 1309, 1309 (Ohio Ct.App.1982) (syllabus number one). The sections of the Ohio statute upon which plaintiff relies to subject the defendant to the personal jurisdiction of the Court provide in pertinent part that:

"(A) A Court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state; ...."

Ohio Rev.Code § 2307.382 (Page 1981).

■ The affidavits of the parties establish the following. AQD is a Texas corpo-

ration with its principal place of business in Houston, Texas. (Doc. No. 6 at Exhibit B). None of its shareholders, directors or officers are residents of Ohio. (*Id.*). AQD is not registered to do business in Ohio, has no representative or agent authorized to accept service of process in Ohio, and owns no property in Ohio. (*Id.*). It does not advertise or solicit business in Ohio. (*Id.*).

The Army provided Milacron with the names of the limited number of manufacturers of high pressure water pumps. (Doc. No. 7 at Exhibit B). Milacron contacted AQD and issued its purchase order for the pump. (*Id.*). AQD shipped the pump to Milacron's Lebanon, Ohio plant on January 3, 1983. (*Id.*). On May 11, 1983, AQD sent an employee to Ohio to aid in the start-up of the pump. (*Id.*). After trouble was experienced, Robert Grower and George Rankin of AQD visited Milacron's Lebanon plant on July 20, 1983 and August 15, 1983. AQD subsequently shipped a "loaner" pump to Milacron in Ohio. (*Id.*).

The written submissions of the parties indisputably establish that AQD contracted with the plaintiff to supply both a high pressure water pump and personnel to assist in its testing. The pumps were, in fact, delivered to Milacron at Lebanon, Ohio. The cause of action asserted by plaintiff in the present case is for breach of contract and warranty and clearly arises from AQD's "contracting to supply services or goods in this state." Ohio Rev.Code § 2307.382(A)(2).[1]

In turning to the next issue, it should be noted that the constitutional limitations on the exercise of personal jurisdiction over a nonresident defendant are certainly well-established. *But see Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 445 U.S. 907, 909, 100 S.Ct. 1087, 1088, 63 L.Ed.2d 325 (1980) (dissenting opinion) ("the question of personal jurisdiction over a nonresident corporate defendant based on contractual dealings with a resident plain-

---

**1.** Because of the disposition of the issue of personal jurisdiction, the Court finds it unnecessary to consider whether the requirements of

"transacting any business in this state" in § 2307.382(A)(1) have been met. Ohio Rev. Code § 2307.382(A)(1) (Page 1981).

tiff has deeply divided the federal and state courts."). "Due process requirements are satisfied when *in personam* jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), *quoting, Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)." *Helicopteros Nacionales v. Hall,* —— U.S. ——, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The United States Court of Appeals for the Sixth Circuit, in its leading case of *Southern Machine* has adopted guidelines for determining whether a particular set of circumstances establishes "minimum contacts" between a nonresident defendant and the forum state to support personal jurisdiction:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries,* 401 F.2d 374, 381 (6th Cir.1968); *see Welsh,* 631 F.2d at 440.

█ In turning to the legal analysis of the issue, a defendant "purposefully avail[s] himself of the privilege of acting in the forum state or causing a consequence in the forum state" when "he has done something in a purposeful manner or with such knowledge as to make his deeds the equivalent of purposeful action." *In-Flight Devices Corp.,* 466 F.2d at 226. This requirement is designed to avoid the situation where the "unilateral activity" of the plaintiff can drag an unwilling defendant into a foreign forum. *Id.* With such a view of the first requirement, the Court finds that the plaintiff purposely availed itself of acting in the forum state. Plaintiff became involved with Ohio through its

actions in supplying a high pressure water pump and AQD technical assistance to an Ohio corporation. These actions were done as a result of freely and intentionally entering into a contractual relationship with an Ohio corporate resident for the sale of $38,-570 water pump.

Next, the cause of action for breach of contract and warranty arose out of the defendant's activities in Ohio. It is beyond cavil that the present dispute arose out of the defendant's alleged failure to provide the plaintiff with a high pressure pump capable of performing the tank cleaning operation within the specified period of time.

Finally, the acts of the defendant or consequences caused by the defendant do have a substantial enough connection with the forum state to make the exercise of personal jurisdiction over the defendant reasonable. The state of Ohio certainly has an interest in resolving a lawsuit commenced by one of its residents. *Id.* at 232. "Holding a defendant answerable for his failure to perform the obligations imposed upon him by such a contract is consistent with Ohio's expressed policy of securing to its businessmen the benefit of their bargains." *Id.*

In short, AQD voluntarily entered into a contract with a corporation it knew to be an Ohio resident and made certain product performance representations that it certainly must have known would have effects in Ohio upon the failure of its product to perform. Further, the fact that the contract states that it is to be construed according to Ohio law (doc. no. 5, Brief in Support at 3) permits the inference that the defendant "invoked the benefits and protection of the laws of [the] state." *International Shoe Co.,* 326 U.S. at 319, 66 S.Ct. at 159. Under the circumstances of this case, it was reasonable for the defendant to have anticipated "being haled into court" in Ohio when the contract was breached. *See World-Wide Volkswagon Corp. v. Woodson,* 444 U.S. 286, 297, 100

S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *In-Flight Devices Corp.*, 466 F.2d at 234.

On the entire record before the Court, it is concluded that as a matter of law, the plaintiff has met its burden of establishing the Court's personal jurisdiction over the defendant by a preponderance of the evidence. *See Armbruster*, 711 F.2d at 1335; *Priess*, 535 F.Supp. at 1275. There were sufficient "minimum contacts" with Ohio that the Court's exercise of personal jurisdiction over AQD comports with the due process limitations announced in *International Shoe Co.*, 326 U.S. at 316, 66 S.Ct. at 158.

### C. Venue

 The final contention of AQD is that it is entitled to a change of venue to the Southern District of Texas, Houston Division pursuant to 28 U.S.C. § 1404(a). That statute states:

> "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

28 U.S.C. § 1404(a) (1981). The relevant factors weighed in the balancing approach to the issue of whether a transfer may be appropriate include the convenience of the witnesses, where the operative facts occurred, location of documentary evidence, and the possibility of prejudice in either the forum or transfer state. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *Artisan Development v. Mountain States Development Corp.*, 402 F.Supp. 1312, 1314–15 (S.D.Ohio 1975). The Court must give foremost consideration to the plaintiff's choice of forum and the balance must weigh "strongly in favor of a transfer" before the Court may grant a § 1404(a) motion. *Priess v. Fisherfolk*, 535 F.Supp. at 1279, *quoting, Nicol v. Koscinski*, 188 F.2d 537 (6th Cir.1951).

 Plaintiff is a resident of Ohio and its choice to proceed with the lawsuit in its home state "cannot be overemphasized." *Id.* at 1280. While the defendant states in its affidavit (doc. no. 5 at Exhibit A) that it

plans to call its ex-employees and Houston, Texas residents Michael Hinch and Robert Grower who would be inconvenienced by a Cincinnati trial, the plaintiff provides in its affidavit that the live testimony of twelve Ohio residents is necessary for the presentation of its case. (Doc. No. 7 at Exhibits A, B). Further, although the pump was designed in Texas, the system's specifications, blueprints, records and testing results are in Ohio, where the testing of the pumps occurred. (*Id.* at Exhibit A).

We do not find that plaintiff has, by its choice of forum, "harassed" the defendant by inflicting upon it expense or trouble not necessary to its own right to pursue its remedy. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. at 843. Because the balance of the factors is not "strongly in favor of the defendant," the plaintiff's choice of forum will not be disturbed.

Accordingly, the defendant's Motion for Change of Venue (doc. no. 5) and Motion to Dismiss (doc. no. 6) are hereby **DENIED.**

**IT IS SO ORDERED.**