**R. Alan GARRETT, Plaintiff,**

v.

**RUTH ORIGINALS CORPORATION, and Ruth Combs, Defendants.**

**No. C–2–77–540.**

United States District Court, S. D. Ohio, E. D.

Aug. 28, 1978.

Charles S. Lopeman, Lopeman, Lopeman & Patton, Columbus, Ohio, for plaintiff.

Duke W. Thomas, Suzanne Richards, Vorys, Sater, Seymour & Pease, Columbus, Ohio, for defendants.

## OPINION AND ORDER

KINNEARY, District Judge.

This matter is before the Court on the defendants' motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue of this action to the Western District of North Carolina. For the reasons which follow, the Court has determined that the defendants' motion, except as to the defendant Ruth Combs, is without merit.

The plaintiff, R. Alan Garrett, brought this diversity action for breach of a contract of employment against the defendants Ruth Originals Corporation and Ruth Combs. Ruth Originals Corporation [hereinafter "the Corporation"] is incorporated and has its principal place of business in the State of North Carolina; it does not maintain an office in Ohio. Defendant Ruth Combs is the President of the Corporation, and resides in North Carolina.

In response to the plaintiff's complaint the defendants filed a motion to dismiss for lack of personal jurisdiction or to transfer venue to the Western District of North Carolina. The burden was therefore placed on the plaintiff to set forth specific facts establishing the Court's jurisdiction over the defendants. *Weller v. Cromwell Oil Company,* 504 F.2d 927, 929–30 (CA 6, 1974). Plaintiff has responded with an affidavit and a memorandum contra the motion to dismiss. Therefore, the facts upon which the Court will base its decision of this motion are those contained in the plaintiff's affidavit, and those upon which the parties are in agreement.

### I

On June 1, 1975, Robert C. Edwards, Executive Vice-President of Ruth Originals placed a phone call to the plaintiff in Ohio informing him of the opening for the position of Director of Marketing of the Corporation's Fadoosie Division. Plaintiff was employed at that time by a department store in Columbus, had done business with the Corporation for at least nine years, and was acquainted with many of its officers and representatives. During the conversation, Mr. Edwards made it apparent that the Corporation was at the very least desirous that the plaintiff apply for the position.[1]

---

1. Plaintiff's affidavit states that the job was being "offered" to him during the initial phone conversation. However, plaintiff's memorandum contra states that Mr. Edwards, rather

Shortly thereafter the plaintiff, while in New York, called Mr. Edwards concerning the Fadoosie position; this call was placed at the suggestion of the defendants' New York representative, Ms. Barbara Tribblehorn. Plaintiff then made two visits to the Corporation's offices in North Carolina at which time the majority of the contract's details were determined. Plaintiff asserts that the final acceptance of the employment contract occurred during a subsequent telephone call placed by Mr. Edwards to the plaintiff in Ohio. It was during that call that the plaintiff's salary was agreed upon.

Plaintiff moved to New York to assume his new position. The alleged breach of the contract occurred some eleven months later when the Fadoosie Division was discontinued, and the plaintiff was offered no other employment with Ruth Originals. The plaintiff then returned to Columbus, where he filed this complaint alleging breach of contract on the part of the defendant corporation, and tortious interference with contractual relations on the part of Ruth Combs.

## II

■ In a diversity suit, the jurisdiction *in personam* of this Court over the defendant is determined by the law of the forum state. *In-Flight Devices Corporation v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (CA 6, 1972). Personal jurisdiction over non-resident defendants in Ohio is authorized by Ohio Revised Code § 2307.382 which provides in pertinent part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

.    .    .    .    .

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

(B) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

■ At present, there appears to be no controlling Ohio authority with regard to the application of this statute to the facts of this case. It has been held by the Court of Appeals for the Sixth Circuit, however, that O.R.C. § 2307.382 was intended by the Ohio legislature to extend personal jurisdiction to the constitutional limit. *In-Flight Devices Corp. v. Van Dusen Air, Inc., supra* at 224. That constitutional limit is the due process clause, which

requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

*International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

■ In the Sixth Circuit there has evolved a three step analysis which is used to determine the applicability of the state statute and the limits of due process. As stated by the Court in *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (CA 6, 1968),

First, the defendant must purposefully avail himself of the privilege of acting in

---

than expressly offering the job, simply rejected the plaintiff's suggestion of another person, and then described at length the qualifications for the position in terms which could only fit the plaintiff. Defendants' reply makes no attempt to dispute this description of that conversation, but only restates the conclusion that

the Corporation "did not solicit plaintiff's employment." Reply Memorandum of Defendants at 3. It is clear, then, that the plaintiff has set forth facts which show that, at minimum, he was being asked to apply for the opening in the conversation of June 1, 1975.

the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.

The most important Sixth Circuit precedent for the case at bar is *In-Flight Devices Corporation v. Van Dusen Air, Inc.,* 466 F.2d 220 (CA 6, 1972), not only because it further elaborated the three part long-arm analysis, but because it dealt expressly with the Ohio statute now at issue. In applying the appropriate legal standard to the facts of this case, this Court will apply the step-wise approach employed by Judge Cele-brezze in *In-Flight Devices.*

### A. Purposeful Activity in the Forum

With regard to the first step of the test for personal jurisdiction, the Court in *In-Flight Devices* stated that

[i]n this Circuit one has "acted" so as to transact business in a state "when obligations created by the defendant have a realistic impact on the commerce of that state." Such "acts" become purposeful if the defendant "should have reasonably foreseen that the transaction would have consequences in that state."

*In-Flight Devices, supra* at 226 (quoting *Southern Machine Co. v. Mohasco Industries, Inc., supra* at 382–83). It is apparent that the *In-Flight Devices* Court recognized that this requirement of purposeful action is a preliminary requirement which is liberally construed, but in no way discharges the further duty under step three of the analysis to determine that the assertion of jurisdiction because of that purposeful activity is nevertheless fair and reasonable. *Id.* at 227–28. In considering the extreme case, the *In-Flight Devices* Court concluded as follows:

Certainly the intentional entering into a contractual relationship with a resident of the forum state is sufficient to protect against the *Hanson v. Denckla* problem and so to meet the purposeful action requirement.[2]

Thus, the Sixth Circuit recognized that the simple fact of known residence of one party to a contract in the forum state would meet the first prong of the test for long-arm jurisdiction.[3]

The facts of the present dispute, however, present no such extreme case. In addition to the fact that the defendant entered into a contract with an Ohio resident, the defendant also contacted the plaintiff in Ohio by mail and telephone on a number of occasions with regard to the contract. The initial contact with the plaintiff and the ultimate acceptance of the contract were made in telephone calls initiated by the defendant and placed to the plaintiff in Ohio. The performance of the contract of employment was chiefly to take place in New York, but it also required that the plaintiff leave his established position of employment and place of residence in Ohio. Such a departure would have an unavoidable impact upon the commerce of Ohio which differs in kind from the simple case where a forum resident contracts with an out of state resident to perform wholly out of state services, but the forum resident maintains his residence or place of business within the forum. In the latter case, the only impact upon the state is the creation of a duty owed to one of its residents. In the instant case, that impact exists plus the effect of the plaintiff withdrawing his human capital from the state.

There can be no doubt that the defendants' actions were purposeful or that the consequences in the state were foreseeable. The plaintiff asserts that he had had a nine

---

**2.** In *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), Chief Justice Warren's opinion stated that due process requires that a defendant "purposefully avails itself of the privilege of conducting activities within the forum State . . . ." *Id.* at 253, 78 S.Ct. at 1240.

**3.** *See In-Flight Devices, supra* at 227 n. 13 (discussing *Simpson Timber Co. v. Great Salt Lake Minerals & Chemicals Corp.,* 296 F.Supp. 243 (D.Or.1969)).

year relationship with the defendant corporation, that the defendants' Vice-President sought him out concerning the employment, and that the plaintiff had no intention at that time to seek another job. The plaintiff has set forth facts which show that this is not a case in which an employer makes known to the world a job opening and receives an application from a distant state. Rather, the defendant affirmatively contacted the plaintiff in the forum state, offering a position which it knew would require the plaintiff to leave his former employment.[4] The Court therefore finds that the defendant corporation engaged in purposeful activity in Ohio.

To hold differently, by requiring the realistic impact upon the forum to rise to a high level of substantiality, would allow the first step of the *Southern Machine* test to swallow the entire analysis. A Court would inevitably find that the impact on the state was only "realistic" when the assertion of jurisdiction appeared to be reasonable. To eliminate a case such as this one at this point in the analysis would mean that such contacts could never be sufficient for personal jurisdiction, no matter what other factors militated in favor of the reasonableness of asserting jurisdiction. The flexibility sought by the Supreme Court in *International Shoe* and recently reaffirmed in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), would be lost, the express language of *In-Flight Devices* would be disapproved, and prior Supreme Court adjudications such as *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) would become inexplicable.[5]

*B.  The Cause of Action Must Arise From the Defendants' Activities*

■ In determining that the defendant corporation engaged in purposeful activity,

this Court has only considered those contacts with Ohio which directly related to the presently disputed contract. Therefore, "Defendant's transaction of business in Ohio—its entering of a contractual relationship with an Ohio [resident]—is necessarily the very soil from which the action for breach grew." *In-Flight Devices, supra* at 229. Thus the required nexus between the defendant corporation's purposeful activity and the plaintiff's cause of action is easily met in this case. *Id.*

*C.  The Assertion of Jurisdiction Must be Reasonable*

When the above mentioned prerequisites have been met, the final step is to determine whether, under all the circumstances of the relationship between the forum state and the defendant, the assertion of *in personam* jurisdiction offends "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington, supra* 326 U.S. at 316, 66 S.Ct. at 158. Obviously, these amorphous concepts defy facile definition. The Sixth Circuit has, however, attempted to identify some of the factors which should be taken into account.

Defendant vigorously and ably asserts that the minimum contacts are not sufficient to justify jurisdiction because, *inter alia*, the contract was to be performed in New York and not in Ohio. While plaintiff did perform his employment duties in New York, it is also true that the defendant was aware, more so than in the ordinary employment situation, that the contract would require the plaintiff to leave his Ohio employment—a step which the plaintiff had not contemplated prior to the defendant's offer. The defendant also points to the lack of physical presence in Ohio of any of the defendant's agents with regard to this contract. The lack of physical presence is relevant, not because of any nineteenth cen-

---

4. Whether the plaintiff is successful in proving these facts is, of course, irrelevant to this Court's present determination of personal jurisdiction.

5. In *McGee*, long-arm jurisdiction was premised on a single contract of insurance

which was adopted by the non-resident defendant corporation. The only contact with the forum state of California was a single letter sent by the defendant, and the routine payment of premiums by the plaintiff. 355 U.S. at 221–22, 78 S.Ct. 199.

tury concepts of sovereign power attaching at the state's borders, but because physical contacts "provide a clue to the significance attached by the defendant to the activities occurring within the forum state—and thus a clue as to his expectations." *In-Flight Devices, supra* at 235. The lack of actual presence in the forum is therefore significant, but by no means dispositive. It is but one factor to be weighed.

The Supreme Court's recent decision in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), applying the *International Shoe* principles to jurisdiction *quasi in rem* as well as *in personam*, demonstrates that the proper focus for the Court is the reasonable expectations of the defendants in light of the actual impact upon the forum. Numerous other factors militate in favor of the reasonableness of personal jurisdiction when considering what the defendant corporation's expectations reasonably should have been. First, the plaintiff has alleged facts which show that the defendant was the aggressor and that the plaintiff was the passive party. It was the defendant's Vice-President who affirmatively sought out the plaintiff in Ohio, it was the defendant's representative in New York who suggested the second contact, and it was the defendant's Vice-President again who suggested that the plaintiff come to North Carolina. The Sixth Circuit's decision in *In-Flight Devices*, recognized that the party who vigorously negotiates and perhaps dictates the terms of the contract is more apt to be subject to the long-arm jurisdiction of the state. 466 F.2d at 233.

Another factor to be considered is the financial ability of the defendant to defend a suit in a distant forum. "We speak here not merely of inconvenience or of the financial hardship litigation in the forum state may pose, but of the sort of inability to litigate which leads to the acceptance of default judgments." *Id.* at 234. There appears to be no such financial inability on the part of the defendant corporation in this case. The defendant does a national business, with sales in 1976 of nearly eight million dollars.[6] Affidavit of Robert C. Edwards, Jr. at 2.

The next factor is what expectations the defendant reasonably should have had with regard to the possibility of defending a suit in a distant forum. This aspect of the reasonableness of personal jurisdiction is often referred to as the defendant's "surprise." *In-Flight Devices, supra* at 233. In this case the defendant is a relatively large corporation engaged in a multi-state operation. Although it maintains no office in Ohio, its representative spends some forty days per year there, and its Ohio sales in 1976 were $166,701.00. Thus, the following language from *In-Flight Devices* becomes pertinent:

> The existence of substantial interstate business in general cannot substitute for some direct contacts with the forum state under the first test of *Southern Machine*, of course, but where such direct contact consists primarily of the entering of a contract with a resident of the forum state by the non-resident defendant the general interstate involvement of the defendant is suggestive of the latter's expectation that it may be involved in litigation far from its home base.

466 F.2d at 234.

In sum, the contract at issue in this case was to be performed in New York, but required that the plaintiff leave his employment and residence in Ohio. Although the defendant corporation's agents did not physically appear in Ohio, "[a] letter or a telephone call may, in a given situation, be as indicative of substantial involvement with the forum state as a personal visit by the defendant or its agents." *In-Flight De-*

**6.** The Court does not consider that the *relative* financial ability or convenience of the parties is in any way relevant to the issue of personal jurisdiction. *Contra, Molybdenum Corporation v. Superior Court*, 17 Ariz.App. 354, 355–56, 498 P.2d 166, 167–68 (1972). The existence of personal jurisdiction is a function of the relationship between the forum state and the defendant. The relative position of the defendant and plaintiff is properly considered as to venue, but not jurisdiction.

vices, supra at 235. Otherwise, the defendant corporation appears to be financially capable of defending this suit, it engages in a general interstate operation with numerous and not insubstantial contacts with Ohio, and, most importantly, the defendant was the aggressive party which made the initial contact, urged the plaintiff to travel to North Carolina for negotiations, and completed the contract by contacting the plaintiff in Ohio.

In the circumstances of this case, the Court is unable to say that the assertion of jurisdiction over this non-resident corporation is unreasonable or unfair. While the question is a close one, it must be kept in mind that the Ohio statute reaches to the limits of constitutional power; the question is therefore not whether it is wise as a matter of legislative policy for this result to occur, but whether it is within the authority of the state in light of the outermost boundary of due process.[7]

### III

Before turning to the other issues before the Court on this motion, it is appropriate to comment upon two recent cases decided by the Sixth Circuit Court of Appeals. In *Capital Dredge & Dock Corporation v. Midwest Dredging Company*, 573 F.2d 377 (CA 6, 1978) and *Pickens v. Hess*, 573 F.2d 380 (CA 6, 1978), the Sixth Circuit affirmed dismissals of diversity suits for lack of personal jurisdiction. Upon close analysis, however, this Court is convinced that neither of these decisions contradict the result reached by the Court today, nor do they portend any narrowing trend in the area of due process limitations on state long-arm jurisdiction.

In *Pickens v. Hess*, the plaintiff building contractor, a Tennessee resident, had contracted to build a private residence for the defendants in their home state of Arkansas. The plaintiff had submitted a bid to the defendants after learning of the project through a "Dodge report," which was "familiar to the building industry as a source of information concerning planned construction projects." 573 F.2d at 382. The defendants did all of the negotiating in Arkansas, and the final contract was completed by the defendants in Arkansas. *Id.* at 383. Thus, *Pickens* was not a case in which the defendants were the aggressive party in contracting with the plaintiff. The Dodge report was distributed over a multi-state area; it was not directed specifically to the plaintiff. In addition, the individual husband and wife defendants were not in the position of a sizeable corporation in interstate commerce with regard to their financial ability to defend a suit in another state. Indeed, their expectations of being sued in a foreign forum with regard to building their home in Arkansas were justifiably much lower than those of the defendant corporation in this case.[8]

In upholding the dismissal for lack of personal jurisdiction, Judge Lively stated that

> the district court did not apply the *Southern Machine* rule mechanically, but made the ultimate finding required by due process considerations—that under the facts of this case it would not be reasonable for a Tennessee court to exercise jurisdiction.

7. The Supreme Court recently applied the *International Shoe* criteria to reverse the assertion of personal jurisdiction by a California court based solely upon the fact that the defendant, a New York resident, had permitted his daughter to live with her mother in California. *Kulko v. Superior Court*, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978). It is noteworthy that the *Kulko* decision occasioned three dissents, indicating that even that extreme set of facts presented a close question as to the reasonableness of asserting personal jurisdiction. *Id.* at 101, 98 S.Ct. 1690 (Brennan, J., dissenting).

8. *See Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1978):
"The differences between individuals and corporations may, of course, lead to the conclusion that a given set of circumstances establishes State jurisdiction over one type of defendant but not over the other." *Id.* at 204 n. 19, 97 S.Ct. at 2580. The same "difference" exists, of course, between a large interstate corporation and a small business which is essentially a single state operation.

On the same facts, and consistently with today's decision, this Court would agree.

In *Capital Dredge & Dock Corporation v. Midwest Dredging Co., supra*, the opinion of Judge Peck quoted the following summary of the facts:

The 1975 agreement *was sought by plaintiff* Capital. *All negotiations were conducted outside the State of Ohio.* Each of the phone calls was *initiated by plaintiffs* in Ohio to defendants' representatives in other states. The only direct contact between Midwest and plaintiffs with respect to the contract out of which the causes of action are alleged to arise was its vice-president delivering the final contract to the offices of Capital in Ohio and his receiving the first payment under the contract. Plaintiff was to produce no goods in Ohio, *nor was any of its performance to have any impact on Ohio other than its obligation to pay money* under the agreement. These facts are simply insufficient to establish long-arm jurisdiction over defendant.

573 F.2d at 380 [emphasis supplied]. The emphasized portions of that summary demonstrate significant factual departures from the case at bar. Here the contract was sought by the defendant, the crucial factor of salary was negotiated and settled in Ohio, telephone contact was initiated by the defendants, and the defendant was aware that the plaintiff, not then in the job market, would have to terminate his employment and residence in Ohio in order to accept the contract. Again, the Court finds nothing in these two recent cases, both of which cite as controlling the analysis of *Southern Machine* and *In-Flight Devices*, which mandates a different result in the case at bar.

## IV

The plaintiff's memorandum contra the motion to dismiss and the accompanying affidavit wholly fail to deal with the motion to dismiss as to the defendant Ruth Combs.

This alone is reason for the Court to grant the motion to dismiss. Southern District of Ohio Rule 3.5.2. In addition, the plaintiff has not met his burden to set forth specific facts establishing jurisdiction over Ruth Combs. *Weller v. Cromwell Oil Company*, 504 F.2d 927 (CA 6, 1974). Because plaintiff's complaint fails to state facts sufficient to support the exercise of in personam jurisdiction over Ruth Combs, the Court finds that the motion to dismiss as to Ruth Combs has merit.

## V

The defendants also urge the Court to transfer venue to the Western District of North Carolina pursuant to 28 U.S.C. § 1404(a) which provides as follows:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

There is no dispute that this action "might have been brought" in the Western District of North Carolina.

The determination of the question of venue, unlike that of personal jurisdiction, is a matter within the Court's discretion. Numerous factors are relevant to the Court's decision. Defendant contends that it will be burdened by producing the relevant corporate records in Ohio and that many of its anticipated witnesses are residents of North Carolina. On the other hand, it appears that other likely witnesses are from New York. There will also be witnesses with regard to the plaintiff's damages, some of which are of an unusual nature.[9] The Court agrees with the plaintiff that, because the defense witnesses as to the contract are likely to be employees of the defendant corporation, it would be much more convenient for them to travel to Ohio than for the plaintiff's witnesses to travel to North Carolina.

---

9. For example, plaintiff claims as damages losses suffered in selling a valuable show dog and various antique items.

Since the Court has determined that the assertion of personal jurisdiction over the defendant corporation is proper, the relative convenience of these parties becomes relevant to the issue of venue. It is apparent that the defendant is in a much better position to litigate this suit in a distant forum than is the plaintiff. In fact, plaintiff has asserted that it was the action of the defendant which put the plaintiff in his present financially feeble position.

Upon consideration of these factors, and the other factors relevant to the question of appropriate venue, *see generally Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Court determines that venue should remain in the Southern District of Ohio.

WHEREUPON, the Court determines that the defendants' motion to dismiss as to Ruth Combs is meritorious and is therefore GRANTED. The defendants' motion to dismiss as to Ruth Originals Corporation is DENIED. The defendants' alternative motion for transfer of venue to the Western District of North Carolina is DENIED.

Ralph C. Kleinschmidt, Evans & Dixon, St. Louis, Mo., for defendant.

## ORDER VACATING JUDGMENT AND DISMISSING CAUSE

WANGELIN, District Judge.

All matters and things in controversy between the parties hereto having been fully and finally satisfied, compromised, settled and resolved, at the request of the parties, it is

ORDERED that the judgment of this court entered on June 20, 1978, 452 F.Supp. 529, be vacated and for naught held, and that the Complaint and cause of action of the plaintiffs be dismissed with prejudice to the refiling thereof, with plaintiffs' acknowledging satisfaction of costs.

BRECKENRIDGE HOTELS CORP., a Missouri Corporation, and Breckenridge's Inn of the Spanish Pavilion, Inc., a Missouri Corporation, Plaintiffs,

v.

REAL ESTATE RESEARCH CORPORATION, a Delaware Corporation, Defendant.

No. 76–920C(2).

United States District Court, E. D. Missouri, E. D.

Aug. 28, 1978.

Richard E. Coughlin, Sumner, Hanlon, Sumner, MacDonald & Nouss, Clayton, Mo., for plaintiffs.