**HEALTH CARE INDUSTRIES, INC., Plaintiff,**

v.

**LOGAN PARK CARE CENTER, INC., Defendant.**

No. C–3–82–557.

United States District Court, S.D. Ohio, W.D.

Oct. 12, 1983.

Kenneth R. Klipfer, Dayton, Ohio, for plaintiff.

John B. Pinney, Cincinnati, Ohio, for defendant.

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO DISMISS; PLAINTIFF'S MOTION TO DISMISS NOT RULED UPON; PRETRIAL CONFERENCE SET

RICE, District Judge.

Plaintiff, an Ohio corporation, filed this diversity action against Defendant, a West

Virginia corporation. In its complaint, Plaintiff alleged that Defendant breached an oral settlement agreement which cancelled an arbitration scheduled for May 25, 1982, and also committed fraud in entering into same. Defendant has moved (Doc. # 3) to dismiss the complaint for lack of *in personam* jurisdiction, and insufficiency of service of process, pursuant to Fed.R. Civ.P. 12(b)(2) & (5). For the following reasons, the Court overrules the motion.

## I.

The record reveals the following undisputed facts. One Jeff Everett, a Certificate of Need Consultant for Defendant, contacted Plaintiff by telephone in August of 1978; Everett had an office in Worthington, Ohio. As a result of this contact, representatives of Plaintiff and Defendant met in Everett's office on August 16, 1978, to discuss construction of a nursing home in Logan Park, West Virginia. Later, Plaintiff's officials would have "numerous" telephone conversations with Everett concerning the Logan Park facility, *see generally*, Affidavit of Paul J. DePalms, attached to Doc. # 4, and also met on one occasion with the treasurer of Defendant, in Cincinnati, Ohio, to discuss the construction agreement. *See*, Affidavit of Jack S. Semelsberger, attached to Doc. # 4. Plaintiff eventually constructed the facility, but the parties disagreed over the final payment of certain unexpected construction costs. Arbitration of the matter was set in Columbus, Ohio, but settlement was reached beforehand. The arbitration was cancelled pursuant to the settlement. Doc. # 4, Exs. A–B. All other acts concerning the construction of the facility took place in West Virginia. Affidavit of James P. Martin, attached to Doc. # 3.[1]

## II.

■ Defendant claims, under Rule 12(b)(2), that this Court has no personal jurisdiction over it and, under Rule 12(b)(5), that service of process was insufficient

pursuant to Rule 4(e) and Ohio R.Civ.P. 4.3(B)(1). In this diversity action, the Court must apply the "long arm" statute of the forum state, Ohio Rev.Code Ann. § 2307.382 (Page 1982), to determine if personal jurisdiction over Defendant is proper. *National Can Corp. v. K Beverage . Co.*, 674 F.2d 1134, 1136 (6th Cir.1982); *Poyner v. Erma Werke GMBH*, 618 F.2d 1186, 1187 (6th Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). *See also, In-Flight Devices Corp. v. Van-Dusen Air, Inc.*, 466 F.2d 220, 224 n. 3 (6th Cir.1972) (certified mail pursuant to Ohio Rule 4.3 is only effective upon non-resident defendants "where a valid basis for in personam jurisdiction over the defendants exist.")

Plaintiff argues that in personam jurisdiction may be had over Defendant, based on one or more provisions of the Ohio long arm statute. Ohio Rev.Code § 2307.382 provides, in pertinent part, that:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

(2) Contracting to supply services or goods in this state;

(3) Causing tortious injury by an act or omission in this state.

The Sixth Circuit has held that this statute is intended to extend the personal jurisdiction of courts to the constitutional limits of due process. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *In-Flight Devices Corp., supra*, 466 F.2d at 225.

In defining these constitutional limits, the Supreme Court has held that the Defendant must have certain "minimum contacts" with the forum state, so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *World-Wide Volkswagen*

---

1. Plaintiff also claims, Memorandum Contra, Doc. # 4, p. 3, that most of the subcontracting work was by Ohio corporations, but this is nowhere evident in the record.

*Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citing, *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The Sixth Circuit has developed a three-part test to determine whether the application of the Ohio long arm statute provides sufficient contact between a non-resident defendant and the forum state so as to support personal jurisdiction.

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Welsh v. Gibbs, supra,* 631 F.2d at 440; *In-Flight Devices Corp., supra,* 466 F.2d at 226.

▪ Once challenged, a plaintiff has the burden of demonstrating the propriety of *in personam* jurisdiction over a defendant. *First National Bank v. J.W. Brewer Tire Co.,* 680 F.2d 1123, 1125 (6th Cir.1982) (per curiam); *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 929 (6th Cir.1974). Here, as noted above, the affidavits and other materials filed by the parties yield no material dispute. The Court can, therefore, determine jurisdiction as a matter of law. *First National Bank, supra; Welsh v. Gibbs, supra,* 631 F.2d at 438.

### III.

▪ With these principles in mind, the Court turns to the positions of the parties. Essentially, Defendant argues that Plaintiff has not demonstrated facts which satisfy the three-part test outlined above. Defendant particularly emphasizes that "only" negotiations took place in Ohio, all construction work was performed in West Virginia, and the "only" impact in Ohio was the creation of an obligation to pay money. For the last point, Defendant relies on *Wainscott v. St. Louis-San Francisco*

*Railroad Co.,* 47 Ohio St.2d 133, 351 N.E.2d 466 (1976) where, as this Court has noted, *Neff Athletic Lettering Co. v. Walters,* 517 F.Supp. 1073, 1075 (S.D.Ohio 1981), the Ohio Supreme Court held that the mere solicitation of business in the forum state is not enough to establish "minimum contacts" so as to satisfy due process. In contrast, Plaintiff emphasizes the extended scope of the negotiations in 1978, all of which took place in Ohio, that *Defendant* "affirmatively contacted" Plaintiff in Ohio, and that the arbitration was scheduled to take place in Ohio.

The Court must agree with Plaintiff that it has met the three-part test to establish *in personam* jurisdiction over the Defendant.

The first part of the test requires that the "defendant purposefully avail himself of the privilege of acting in the forum state *or* causing a consequence in the forum state." (emphasis added). Plaintiff has met both prongs of this disjunctive test. Defendant was the one to initially contact Plaintiff in Ohio, and several meetings to negotiate the contract took place between the parties, in Ohio, in 1978. Thus, Defendant undertook the privilege of acting in Ohio, and did not *"merely"* solicit business in Ohio. *See, Garrett v. Ruth Originals Corp.,* 456 F.Supp. 376, 380 (S.D.Ohio 1978) (Kinneary, J.). *Cf. Capital Dredge & Dock Corp. v. Midwest Dredging Co.,* 573 F.2d 377, 380 (6th Cir.1978) (no personal jurisdiction in contract action under Ohio law, where Ohio plaintiff contacted out-of-state defendants, all negotiations took place *outside* of Ohio, and there was no impact in Ohio "other than its obligation to pay money"). Moreover, Defendant arguably did cause an "impact" or "consequence" in Ohio. As the Sixth Circuit has stated, it is incorrect to equate "the idea of commercial impact on the forum with the narrower concept of financial gain or loss in the forum." *Davis H. Elliott Co., Inc. v. Carribbean Utilities, Ltd.,* 513 F.2d 1176, 1181 (6th Cir.1975) (per curiam). Here, several meetings concerning initial contact, negotiation, arbitration, and eventual settlement

took place in Ohio. The (alleged) failure to honor the contract and settlement agreement which grew out of these meetings, have effects on the "general conduct of business" in Ohio which "may not be readily quantifiable," but are "nonetheless real." *Id.* at 1181–82. It is also likely and foreseeable that any judicial review of the arbitration, had it taken place, would have occurred in state or federal court in Ohio. Ohio Rev.Code Ann. § 2711.01 *et seq.* (Page 1982). In short, while all of these activities "were intended ultimately to affect or benefit" construction *outside* of Ohio, it does not mean that Defendant did not purposefully act in the forum state, or "had no impact on the commerce" of Ohio. *Davis H. Elliott, supra,* 513 F.2d at 1182. *Accord, Barile v. University of Virginia,* 2 Ohio App.3d 233, 237, 441 N.E.2d 608, 614–15 (Franklin Cty.1981).

From this analysis, it also seems evident that Plaintiff's cause of action arose, in whole or in part, from Defendant's activities in Ohio, thus meeting the second part of the three-part test. Defendant's transaction of business in Ohio, particularly the formation (and alleged breach) of the settlement agreement, was the basis of the present lawsuit. *Garrett, supra,* 456 F.Supp. at 381. In addition, the complaint and affidavits filed by Plaintiff can be read as suggesting that Defendant's alleged fraud took place in Ohio. This, too, would support a finding that the lawsuit arose out of Defendant's activities in Ohio. *Welsh v. Gibbs, supra,* 631 F.2d at 440–41.

The final part of the test requires that the court consider all the facts together to determine if the assertion of jurisdiction would be "reasonable," in that "the acts of the defendant or consequences caused by the defendant ... have a substantial

enough connection with the forum state." In this case, as outlined above, the actual construction of the facility took place in West Virginia. However, all or virtually all of the meetings concerning that project, both before (negotiations) and after construction (arbitration and settlement) took place in Ohio. Under these facts, it is foreseeable "that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp., supra,* 444 U.S. at 297, 100 S.Ct. at 567.[2]

For all of these reasons, the Court holds that Plaintiff has met the three-part test to determine if exercise of *in personam* jurisdiction over Defendant comports with due process.

## IV.

Based on the aforesaid, Defendant's motion to dismiss is overruled. Plaintiff's "motion" to dismiss Defendant's motion (Doc. # 4) is not ruled upon, since such a motion is not permitted by the local rules; said "motion" is only considered as a memorandum contra.

Defendant is directed to answer or otherwise motion Plaintiff's complaint within ten days after receipt of notice of this entry.

Counsel listed below will take note that a preliminary pretrial conference will be had in the captioned cause, by conference call telephone communication, at 8:35 a.m. on Thursday, October 27, 1983.

---

2. Under the third inquiry of general "reasonableness," some courts have also considered whether a defendant corporation has multi-state operations, or has the financial ability to defend itself in distant forums. *See, e.g., Priess v. Fisherfolk,* 535 F.Supp. 1271, 1274 (S.D.Ohio 1981) (Spiegel, J.); *Garrett, supra,* 456 F.Supp. at 382. Here, Defendant has intimated in its memorandum that it is a "small operation engaged exclusively in the business of operating a nursing

home in Logan, West Virginia," with "no sales whatsoever in Ohio." Defendant's Reply Memorandum, Doc. # 5, pp. 4, 2. However, these assertions are not supported by way of affidavit or in another verified manner, and thus were not considered by this Court. *See, Neff, supra,* 517 F.Supp. at 1074. In any event, it is doubtful that such facts, even if properly supported, would be enough to change the Court's decision.