**WIDGER CHEMICAL CORPORATION and Surface Treatments, Inc., Plaintiffs,**

v.

**CHEMFIL CORPORATION, Diversey Corporation, Diversey Wyandotte Corporation, and Diversey S.A. N.V., Defendants.**

**Civ. A. No. 84–CV–1618–DT.**

United States District Court, E.D. Michigan, S.D.

Jan. 29, 1985.

Ernie L. Brooks, Mark A. Cantor, Brooks & Kushman, Southfield, Mich., for plaintiffs.

Raymond E. Scott, Kevin J. Heinl, Cullen, Sloman, Cantor, Grauer, Scott & Rutherford, P.C., Detroit, Mich., for Chemfil Corp.

Paul Sherr, Birmingham, Mich., for Diversey Corp., Diversey Wyandotte, and Diversey S.A. N.V.; Allan E. Lapidus, John R. Obiala, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., of counsel.

## MEMORANDUM OPINION

FEIKENS, Chief Judge.

Plaintiffs, Widger Chemical Corporation and its subsidiary Surface Treatments, Inc., filed this antitrust and intentional interference with business relations action against defendants Chemfil Corporation, Diversey Corporation, Diversey Wyandotte Corporation and Diversey S.A. N.V. On November 9, 1984, a hearing was held on defendants Diversey S.A. N.V. and Diversey Corporation's motion to dismiss for want of personal jurisdiction. At that hearing, plaintiffs agreed to dismiss Diversey S.A. N.V. without prejudice. I denied Diversey Corporation's motion to dismiss. This opinion supplements that ruling.

## I. BACKGROUND

Plaintiffs Widger Chemical Corporation (Widger) and its subsidiary Surface Treatments, Inc. (STI), sell specialty chemical products for treating and cleaning metals. Defendants Chemfil Corporation (Chemfil) and Diversey Corporation (Diversey) sell competing chemical products. Plaintiffs allege that Diversey and Chemfil have entered into "an overall scheme to stifle competition in [certain chemical p]roducts in the domestic and foreign market ..." in violation of the Sherman Act §§ 1, 2, 15 U.S.C. §§ 1, 2 (1982). Complaint ¶ 21. Plaintiffs also claim that defendants intentionally interfered with the advantageous business relations of Widger and STI. Complaint ¶ 32. Plaintiffs allege that four acts are part of, and manifest the alleged scheme to restrain trade: First, Diversey and Chemfil entered into a license agreement to distribute Chemfil products through Diversey's subsidiaries located

throughout the world. Second, Chemfil obtained a preliminary injunction against Widger and STI in a lawsuit filed in Oakland County Circuit Court (*Chemfil v. Surface Treatments, Inc.*, No. 82–252363 (Feb. 16, 1984)). Chemfil filed suit against Widger, STI, and others, alleging, in part, theft of trade secrets and proprietary information. Widger and STI were enjoined from selling or licensing certain confidential formulas to third persons. Third, plaintiffs allege that representatives of Widger and Chemfil misrepresented the nature of the Oakland County proceedings as a suit for illegally breaking a patent to the Michigan Office of Economic Development (OED) in Belgium. That office promotes Michigan businesses throughout Europe. As a result of the misrepresentation, plaintiffs argue, OED refused to represent Widger. Finally, plaintiffs argue that while Inmont Corporation was negotiating for the purchase of Widger, counsel for Chemfil sent a letter to Inmont including a "copy of the Preliminary Injunction entered by the Court for your information." The preliminary injunction entered by the Court, however, differed from the one sent to Inmont. Diversey moves to dismiss, arguing that it has insufficient contacts with Michigan, and therefore, it is not subject to this Court's jurisdiction.

Diversey (defendant) pleads that it is a Canadian corporation which has never sold any products, been qualified or registered to do business, or maintained an office, telephone listing, or bank account in Michigan. The license agreement Diversey entered into with Chemfil concerns distribution of Chemfil products outside of the United States. Defendant further pleads that no Diversey shareholder, director, employee or agent has ever lived in Michigan, nor has Diversey ever owned any real or personal property located in Michigan. (Affidavit of John Pick, Senior Vice-President of Diversey). The license agreement between Diversey and Chemfil, however, was negotiated in Troy, Michigan, and by its own terms, is subject to the laws of Michigan. Pursuant to that license, Diversey makes payments to Chemfil in Michigan. (Deposition of Malcolm Pemberton). I must decide whether these contacts suffice for assertion of in personam jurisdiction over Diversey.

## II. DISCUSSION

▮ The in personam jurisdictional reach of a federal court hearing a federal question case, such as this one, may be determined by the law of the state in which the court sits. *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 376 n. 2 (6th Cir.1968); *Mad Hatter, Inc. v. Mad Hatters Night Club Co.*, 399 F.Supp. 889, 890 (E.D.Mich.1975). The Michigan long-arm statute, Mich.Comp.Laws Ann. § 600.-715 (West 1981), provides in part:

The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

This statute has been interpreted to reach to the extent permissible under the due process clause. *Williams v. Garcia*, 569 F.Supp. 1452, 1454 (E.D.Mich.1983); *Chrysler Corp. v. Traveleze Industries, Inc.*, 527 F.Supp. 246, 249 (E.D.Mich.1981); *Schneider v. Linkfield*, 389 Mich. 608, 209 N.W.2d 225 (1973); *Sifers v. Horen*, 385 Mich. 195, 188 N.W.2d 623 (1971). I find that either subsection of the long-arm statute cited above can be applied constitutionally to obtain in personam jurisdiction over Diversey.

▮ Where a state's long-arm statute reaches to the extent permissible under the due process clause, the relevant inquiry is whether exercise of personal jurisdiction is constitutional. *Southern Machine*, 401 F.2d at 377–78. The United States Su-

preme Court has articulated the due process limitations on obtaining personal jurisdiction over non-resident defendants in three cases: *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Based on this line of cases, the United States Court of Appeals for the Sixth Circuit articulated three criteria for determining the limits on in personam jurisdiction based on a single act [1]:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine*, 401 F.2d at 381. *See also Welsh v. Gibbs*, 631 F.2d 436, 439–40 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).

■ Initially, I note that the burden of establishing jurisdiction is on plaintiff. *Weller v. Cromwell Oil Co.*, 504 F.2d 927 (6th Cir.1974). This burden, however, is relatively slight, and the Court must consider the pleadings and affidavits in the light most favorable to plaintiff. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981); *Williams v. Garcia*, 569 F.Supp. 1452 (E.D.Mich.1983). I now turn to consideration of each part of the test for establishing personal jurisdiction over defendant.

■ First, defendant has purposefully availed itself of the privilege of acting or causing consequences in Michigan. Defendant entered into a contract with a resident Michigan corporation, which alone, may satisfy the requirement of acting or causing consequences in the forum. *See Chrysler Corp. v. Traveleze Industries, Inc.*, 527 F.Supp. 246, 250; *Microelectronic Systems Corp. v. Bamberger's*, 434 F.Supp. 168, 170–71 (E.D.Mich.1977). In addition, defendant negotiated this agreement, which by its terms is subject to Michigan law, in Troy, Michigan. *See Health Care Industries, Inc. v. Logan Park Care Center, Inc.*, 573 F.Supp. 360 (S.D.Ohio 1983) (Defendant purposefully availed itself of the privilege of acting in Ohio because "[d]efendant was the one to initially contact [p]laintiff in Ohio, and several meetings to negotiate the contract took place between the parties, in Ohio ...."). Diversey also sent at least two letters to Chemfil, and makes periodic payments to Chemfil under the license agreement. Thus, defendant has purposefully "avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239.

Second, plaintiffs' antitrust and intentional interference with advantageous business relations claims arise out of defendant's activities in Michigan. Specifically, plaintiffs allege that the license agreement between Chemfil and Diversey is part of an overall scheme to restrain trade. As evidence of this scheme, plaintiffs cite a November 6, 1981, letter from Diversey's Vice-President for Marketing to Chemfil's President indicating that the parties would meet "to map out [their] strategy for intro-

---

1. A court may exercise jurisdiction over a nonresident defendant in one of two ways: First, a court may exercise "specific jurisdiction" over the defendant when the cause of action arises out of or relates to the defendant's contacts with the forum. Second, where the defendant carries on a continuous and systematic part of its business in the forum, a court may exercise "general jurisdiction" over a defendant for causes of action not arising out of or related to the defendant's contacts with the forum. *See Helicopteros Nacionales de Colombia v. Hall*, —— U.S. ——, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Since I hold that plaintiffs' causes of action arise out of defendant's contacts with Michigan, I need not consider whether defendant would be subject to this Court's general jurisdiction under Mich.Comp.Laws Ann. § 600.711 (West 1981).

ducing Chemfil technology internationally." It is this strategy, of which the license is a part, which plaintiffs allege restrains trade.

Defendant argues, however, that plaintiffs' causes of action do not arise out of defendant's transaction of business in Michigan (Mich.Comp.Laws Ann. § 600.-715(1)), specifically the license agreement, since plaintiffs are not a party to the contract which is the primary basis for jurisdiction. Defendant attempts to distinguish *Traveleze Industries* and *Microelectronic Systems* by arguing that in each of those cases, the plaintiff was a party to the contract upon which jurisdiction was based, and the lawsuit was brought to enforce that contract. Here, plaintiff is a stranger to the contract, and, defendant argues, there is no relation between the contract and this cause of action.

I reject defendant's contention that a cause of action arises out of a defendant's transaction of business in the forum only if the plaintiff is a party to any contracts defendant may enter. The "minimum contacts" analysis is concerned not with defendant's contacts with the plaintiff, but with the "relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). *See Hanson v. Denckla*, 357 U.S. at 251, 78 S.Ct. at 1238 ("[A] defendant may not be called upon to [defend a suit in a foreign tribunal] unless he has had the *'minimum contacts' with that State* that are a prerequisite to its exercise of power over him." (emphasis added)); *International Shoe*, 326 U.S. at 319, 66 S.Ct. at 159 (The due process clause "does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties or relations."). Here, defendant negotiated and entered into a license agreement, and mapped out a strategy for introducing Chemfil products internationally. This transaction of business in Michigan allegedly injured plaintiffs. Thus, I find that plaintiffs' causes of action arise out of defendant's "transaction of ... business within" Michigan, Mich.Comp.Laws Ann. § 600.715(1).

Moreover, it is clear that defendant has done acts in Michigan "resulting in an action for tort." Mich.Comp.Laws Ann. § 600.715(2), and this provides an independent basis for this Court's jurisdiction. That section is applicable here because both plaintiffs' antitrust and intentional interference claims sound in tort. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236 (6th Cir.), *cert. denied*, 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981); *Weinstein v. Norman M. Morris Corp.*, 432 F.Supp. 337, 344 (E.D.Mich.1977). When defendant negotiated and entered into a license agreement with Chemfil, it allegedly engaged in tortious activity in Michigan, and that activity has resulted in this lawsuit. Accordingly, defendant's contacts fall within the reach of § 600.715(2). I therefore conclude that defendant's contacts, whether viewed as transaction of business in Michigan or as acts resulting in an action for tort, satisfy the second part of the *Southern Machine* test.

Finally, I must determine whether "defendant [has] a substantial enough connection with [Michigan] to make the exercise of jurisdiction ... reasonable." *Southern Machine*, 401 F.2d at 381. This Court has previously asserted jurisdiction over nonresident defendants in two breach of contract actions based largely on the defendant's contract with a corporation located in Michigan, for the sale of goods manufactured in Michigan. *Traveleze Industries; Microelectronic Systems.* These cases rest in part on the view that when a defendant enters into a contract with a Michigan resident, the defendant has created an economic impact in Michigan which may justify assertion of jurisdiction. This notion of "economic impact" is quite broad and should not be equated with

> the narrower concept of financial gain or loss in the forum.... The purposeful action test of *Southern Machine, supra,* 401 F.2d at 381, is not intended to require ... that to be subject to the personal jurisdiction of the courts of a state, a nonresident corporation must actively conduct an income-generating enterprise in that state. To the contrary, it is designed only

" ... to insure that the defendant has become involved with the forum state through actions freely and intentionally done. It seeks to avoid the assertion of jurisdiction in a situation where all contacts result entirely from a decision made by plaintiff as was the case in *Hanson v. Denckla.* [357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ]" *In-Flight Devices Corp., supra,* 466 F.2d at 228.

*Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1181–82 (6th Cir.1975).

Defendant contends, however, that unlike the defendants in *Microelectronic Systems* and *Traveleze,* it did not contract to purchase goods manufactured in Michigan, and any impact it had on Michigan is insufficient to justify assertion of jurisdiction. I disagree. Defendant freely and intentionally said "yes" to Michigan when it chose to negotiate and enter into the license agreement in Michigan, and to make payments under that agreement to Chemfil in Michigan. This activity clearly had an impact on this state's commerce. *See Health Care Industries, Inc. v. Logan Park Care Center, Inc.,* 573 F.Supp. 360 (S.D.Ohio 1983) (West Virginia defendant had substantial enough connection with Ohio where defendant negotiated with plaintiff, an Ohio corporation, in Ohio, for the construction of a nursing home in West Virginia.); *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.,* 558 F.Supp. 932 (N.D.Ill.1982) (Jurisdiction over South American defendants was constitutional where defendants sent letters, made telephone calls, and traveled twice to Chicago to negotiate construction of hotels in South America.); *Mercantile Financial Corp. v. UPA Productions,* 551 F.Supp. 672 (N.D. Ill.1982) (Illinois Court's jurisdiction over California defendant was constitutional in a breach of a release action where the release was negotiated and executed in Illinois.).

Ultimately, whether defendant's contacts with Michigan are substantial enough to justify assertion of personal jurisdiction depends on this state's interest in resolving the present conflict. Once the first two criteria for jurisdiction have been satisfied, it is only the unusual case where that interest does not exist. *Southern Machine,* 401 F.2d at 384. These facts do not present that unusual case. Michigan certainly has an interest in providing a forum in which its residents may obtain relief from allegedly unlawful conduct pursued in Michigan. Accordingly, I find that plaintiffs have satisfied the third part of the three-part test for in personam jurisdiction.

III. CONCLUSION

I hold that plaintiffs have shown that defendant has the requisite minimum contacts with Michigan to justify this Court's assertion of personal jurisdiction over defendant. This conclusion rests on plaintiffs' satisfying the three-part test articulated in *Southern Machine,* and subsequent cases interpreting that decision. Accordingly, defendant's motion to dismiss for want of personal jurisdiction was denied following the hearing on this matter.

An appropriate order may be submitted.