ESTATE OF FRANCIS M. RONK, JR., DECEASED, JUDITH ANN RONK, EXECUTOR, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; ESTATE OF FRANCIS MARION RONK, JR., DECEASED HUNTINGTON NATIONAL BANK OF COLUMBUS, TRANSFEREE, TRUSTEE AND BENEFICIARY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Ronk v. Commissioner
Docket Nos. 35741-84; 20578-85.
United States Tax Court
T.C. Memo 1988-432; 1988 Tax Ct. Memo LEXIS 463; 56 T.C.M. (CCH) 139; T.C.M. (RIA) 88432; September 13, 1988. Richard R. Stedman and Robert G. Dykes, for the petitioners. Ronald T. Jordan, for the respondent. PARKER
MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: In these consolidated cases, respondent determined a deficiency of $374,503.47 in the Federal estate tax of the Estate of Francis M. Ronk, Jr., who died in 1980. With regard to this $374,503.47 deficiency determined against the estate, respondent has also determined transferee liability against the Huntington National Bank of Columbus, Ohio in the amount of $350,179.98. [1] After concessions, the sole issue for decision is whether *466 certain life insurance proceeds on the decedent's life were includable in petitioner's gross estate under section 2035. [2]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts, *467 supplemental stipulation of facts, and exhibits attached thereto are incorporated herein by this reference. Petitioner, Estate of Francis M. Ronk, Jr., Deceased Judith Ann Ronk, Executor ("estate"), maintained a legal residence in Dublin, Ohio, at the time the petition in its case was filed. Petitioner, Estate of Francis Mario Ronk, Jr., Huntington National Bank of Columbus, Transferee, Trustee and Beneficiary ("transferee"), had its principal place of business in Columbus, Ohio, at the time the petition in its case was filed. The decedent, Francis M. Ronk, Jr., died testate on November 24, 1980. The estate timely filed its Federal Estate Tax Return (Form 706) on August 21, 1981. On June 9, 1972, the decedent, as grantor, and the City National Bank & Trust Company of Columbus [3] ("City National"), as trustee, entered into an irrevocable agreement of trust ("City National Insurance Trust") that was initially funded with $ 18.75. This irrevocable agreement of trust was part of an estate tax plan recommended by the decedent's attorneys in which it was anticipated that the proceeds of insurance policies on the life of the decedent would be excluded from tax liability under the *468 Federal estate tax provisions. The City National Insurance Trust was valid under the applicable laws of Ohio. The living beneficiaries of the City National Insurance Trust during the life of the decedent were the decedent's wife, Judith Ann Ronk, and his children, Lisa Ronk, Linda Ronk, and Lora Ronk. Prior to the creation of the City National Insurance Trust, the decedent in May of 1971 had executed an application for $1,000,000 (face amount) decreasing term life insurance policy with the Columbus Mutual Life Insurance Company ("Columbus Mutual"). The application designated the owner and beneficiary of the Columbus Mutual policy to be Judith Ann Ronk. The application was approved, and the Columbus Mutual policy #655739 was issued to Judith Ann Ronk, owner, effective May 14, 1971. On October 26, 1972, Judith Ann Ronk assigned all of her right, title, and interest in the Columbus Mutual policy to the City National Insurance Trust. On the same date the decedent assigned two other life insurance policies to the City National Insurance Trust, but those policies are not in issue in *469 this case. The Columbus Mutual Policy #655739 contained a conversion privilege, and in 1973 the City National trust officer solicited the decedent's advice about that conversion privilege. The decedent responded that he wished to exercise the conversion privilege. On August 14, 1973, in response to the decedent's wishes, the City National Insurance Trust arranged for a conversion of the Columbus Mutual policy from a decreasing term insurance policy to a whole life policy #697591 in the face amount of $1,000,000. In a letter dated August 14, 1973, Ben F. Hadley, insurance agent for the decedent, informed the City National Insurance Trust that the decedent was going to write a check to the trust for payment of the insurance premiums on the Columbus Mutual whole life policy. The letter directed the City National Insurance Trust to write a check to pay the policy premiums from the trust, using the funds thus provided by the decedent. The following year the City National Insurance Trust took various actions at the request of the decedent to reduce, to the extent possible, the level of cash required to maintain in full force the whole life insurance coverage in the amount of $1,000,000. *470 Principally, these actions involved using the full loan value of policy #697591 for premium payments, with the decedent paying the balance of the premium due. On July 29, 1975, the decedent was advised by James R. Norris, then the trust officer of City National assigned to administer the City National Insurance Trust, that because the decedent was depositing funds to the trust and the City National Insurance Trust was making premium payments, the trust account would be considered an "active" account, requiring a payment of trustee's fees to City National in accordance with its fee schedule. Norris suggested that the decedent consider paying all such premiums directly to Columbus Mutual to avoid incurring the cost of trustee fees. However, the decedent continued to pay the premiums on the policy by depositing cash in the amount of the respective premiums to the City National Insurance Trust. The City National Insurance Trust would then issue a check to Columbus Mutual in payment of the premiums. Pursuant to the terms of the irrevocable agreement of trust between the decedent and City National, the trustee had no obligation to pay the premiums on life insurance policies owned *471 by the trust. [4] Nonetheless, the trust paid the premiums on the Columbus Mutual policy out of the funds deposited to the trust by the decedent. *472 The premium on Columbus Mutual policy #697591 due on August 14, 1976 was not paid either by the City National Insurance Trust or by the decedent. As a result that policy was placed on an extended term basis at that time, and the term insurance coverage under such policy expired September 10, 1976. The remaining value of the policy, $ 900.58, was remitted to the City National Insurance Trust, the owner of the policy. The decedent, in that instance, did not deposit any funds in the trust for payment of the premium, and consequently the trust did not pay the premium. On or about September 23, 1976, the decedent met with Ben Hadley to discuss his insurance coverage. During this meeting, Hadley compared the premiums and benefits of an annual renewable term insurance with the premiums and benefits under the Columbus Mutual whole life policy that had recently lapsed. At that time the decedent executed an application to Transamerica Life Insurance & Annuity Company, of Los Angeles, California, ("Transamerica") for $ 1,000,000 face amount of annual renewable term life insurance. The application designated the City National Insurance Trust as the owner and beneficiary of the Transamerica *473 policy. The application further provided that the premium notices were to be sent to the decedent at his home address. On October 21, 1976, Columbus Mutual sent a letter to the City National Insurance Trust formally notifying it that the annual premium on the Columbus Mutual policy due on August 14, 1976 had not been paid and the policy had lapsed. The letter also indicated the policy had been placed on an extended term basis on August 14, 1976, and that term had expired on September 10, 1976. The premium payment due August 14, 1976 was not paid by the trust because the decedent had failed to deposit the necessary funds to the trust. When contacted by the City National Insurance Trust, Ben Hadley indicated that he was working with the decedent to acquire the funds for payment of the premium. After the City National Insurance Trust was formally notified of the cancellation of the Columbus Mutual policy in that letter dated October 21, 1976, Ben Hadley was again immediately notified. Hadley indicated to the City National Insurance Trust that he was working with the decedent and that the City National Insurance Trust should take no action. By neither providing the trust with *474 the necessary funds to make the premium payment nor making the premium payment personally, the decedent permitted the Columbus Mutual policy #697591 to lapse. The remaining value of that policy, $ 900.58, was remitted to the City National Insurance Trust. The Transamerica policy applied for by the decedent was approved by Transamerica on December 10, 1976, and was issued, as policy #61420, effective December 14, 1976, to the City National Insurance Trust as owner and beneficiary, with the decedent as the applicant. The initial premium of $ 2,597.50 was paid directly by the decedent out of his own funds. The agreement of trust between City National and the decedent continued to provide that the City National Insurance Trust had no obligation to pay the premiums, and the decedent paid all the premiums on policy #61420. In December 1976, the decedent initiated contacts with the mortgage and commercial lending division of the Huntington National Bank of Columbus ("Huntington National") for the purpose of obtaining credit for his individual and partnership real estate businesses. During this time period, the decedent was in the process of changing all of his personal and business *475 bank accounts from City National to Huntington National. Huntington National lending officer, J. P. Walsh, asked the decedent if he would consider changing over his life insurance trust from City National to Huntington National. Shortly thereafter, at a conference attended by J. P. Walsh, the decedent, and John Grant, a Huntington National trust officer, the decedent agreed to switch the City National Insurance Trust to Huntington National, with the latter's assistance. The decedent's changeover of his bank accounts from City National to Huntington National and his agreement to transfer the life insurance trust to Huntington National were made to enhance his opportunities to obtain credit from Huntington National. The decedent then continued until his death on November on November 24, 1980, to have a commercial lending and mortgage relationship with Huntington National. On March 8, 1977, the decedent, as grantor, and Huntington National, as trustee, entered into an irrevocable agreement of trust ("Huntington National Insurance Trust") that was initially funded with $ 18.75. The beneficiaries of the Huntington National Insurance Trust as designated by the decedent during the *476 life of the decedent were decedent's wife, Judith Ann Ronk, and his children, Lisa, Linda, and Lora. This irrevocable agreement of trust is essentially the same as the earlier one with City National, including the provision that the trustee has no obligation to pay the insurance premiums. See n.4, supra. The decedent then executed two documents, an "Assignment to Transfer Ownership" form and a beneficiary designation form, in an attempt to transfer ownership of and change the beneficiary of the Transamerica policy from the City National Insurance Trust to the Huntington National Insurance Trust. Transamerica responded to the decedent's "Assignment to Transfer Ownership" and beneficiary designation forms by indicating that the policy could not be transferred unless the transfer was endorsed by the City National Insurance Trust, the owner and beneficiary of the policy. On July 27, 1977, the decedent wrote to John E. Stine, trust officer of City National, stating in part: "I have had a policy on my life which was owned by my irrevocable trust. This policy needs to be changed to the Huntington National Bank as they are now the Trustees of that irrevocable trust." The decedent, *477 his attorneys, and Huntington National all attempted to secure a change of trustee from City National to Huntington National with respect to the City National Insurance Trust. However, before City National would consent to resign as trustee, it demanded that Huntington National execute a letter indemnifying City National from any liability arising from its services as trustee of the City National Insurance Trust. Huntington National refused to deliver such a letter of indemnification. City National refused to accept a similar release or indemnification from the decedent or from Judith Ann Ronk. The decedent's attorneys finally advised him that there was no way to have the trustee changed from City National to Huntington National. [5]
*478 After these attempts to change the trustee or to transfer the Transamerica policy ended in failure, the decedent on January 3, 1978, signed an application for $1,000,000 face amount of annual renewable term life insurance with Occidental Life Insurance Company, a subsidiary of Transamerica. The application was accompanied by a medical report dated January 5, 1978. The application designated the owner and the beneficiary of the Occidental policy to be the Huntington National Insurance Trust. All premium notices were also to be sent to the Huntington National Insurance Trust and the application named Francis M. Ronk, Jr., as the insured. The application also provided that the policy was not to be in effect until the initial premium was paid. Judith Ann Ronk executed an authorization to Huntington National to permit the purchase of an insurance policy on the decedent's life for the Huntington National Insurance Trust. On February 9, 1978, a form entitled "Request to Change Life Policy" with respect to Transamerica policy #61420 was submitted to Transamerica, requesting that the Transamerica policy be terminated effective as of December 14, 1977. The form further stipulated that *479 a new Occidental policy applied for by the decedent, as insured, and Huntington National Insurance Trust, as owner and beneficiary, be issued with the effective date as of December 14, 1977. The form further requested that the unearned premium on the Transamerica policy be refunded to the decedent as the insured. That "Request to Change Life Policy" form contains the purported signature of the Transamerica policy owner (John E. Stine, trust officer for City National), the signature of the insured (the decedent), and the signature of Ben Hadley as witness of the signatures of the owner and the insured. The signature purporting to be that of John E. Stine, vice president of City National, was a forged signature. Either the decedent or Ben Hadley forged or caused to be forged Stine's signature. Due to the forgery of Stine's signature, the document entitled "Request to Change Life Policy," in which City National purportedly requested that the premiums on the Transamerica policy be refunded to the insured, was not properly authorized by City National. On March 16, 1978, George Kaufmann, on behalf of Transamerica, sent a letter to the City National Insurance Trust acknowledging the *480 receipt of the "Request to Change Life Policy." The letter stated that the Transamerica policy #61420 had been canceled effective as of December 14, 1977, and that the unearned premium refund in the amount of $ 2,777.50 was made in favor of the insured (the decedent). The letter further stated that a new $ 1,000,000 policy was issued on the decedent's life with Huntington National as the trustee owner. The letter also stated that if the above-described transactions were not the intent of the City National Insurance Trust to please contact Mr. Kaufmann within ten days of the date of the letter. There is no evidence in the record to show whether or not the City National Insurance Trust responded to the letter. The new Occidental policy #5871557 was placed in force, effective as of December 14, 1977. The policy was an annual renewable term life policy with a face amount of $ 1,000,000. A comparison of the provisions of the Occidental policy with the provisions of the Transamerica policy indicates that the premiums payable on the new Occidental policy were $ 2,735.00 as opposed to $ 2,777.50 on the Transamerica policy. In addition, the Occidental policy established new incontestability *481 and suicide clauses, effective for two years after the date of issuance of the policy. Further, the Occidental policy provided for a period of conversion to a whole life policy substantially shorter than that allowed in the former policy. Pursuant to an Occidental form entitled "Statement of Change," the premium refund that was to be refunded to the decedent as the insured in the amount of $ 2,777.50 from the Transamerica policy was applied as an offset against the initial annual premium of the Occidental policy in the amount of $ 2,735. The balance of $ 42.50 was designated as "due policyholder" and was refunded to the decedent. The decedent paid the next two annual premiums on the Occidental policy out of his personal funds in the amounts of $ 2,955 and $ 3,225 on or about December 14, 1978, and December 14, 1979, respectively. Pursuant to the provisions of the Occidental policy, upon the decedent's death the Huntington National Insurance Trust received $ 1,007,712.29, of which $ 7,535.58 was interest earned subsequent to the date of the decedent's death and hence not reportable as part of his gross estate in any event. It cannot be determined from the record how or when the *482 Huntington National Insurance Trust distributed these funds to the trust's beneficiaries. The estate timely filed its Federal estate tax return on August 21, 1981. In the return, the estate reported a total gross estate of $ 2,531,387.27, which included the $ 1,007,712.29 received by the Huntington National Insurance Trust as proceeds of the Occidental policy. The estate claimed deductions under section 2053(a) in the amount of $ 3,245,387.35. This resulted in the return showing a taxable estate of zero. In his notice of deficiency dated July 18, 1984, respondent determined that under section 2053(c)(2) the claimed deductions under section 2053(a) were limited to the property in the gross estate subject to claims, or probate property, which respondent determined to be $ 1,480,243.18. This reduction in the estate's allowable deductions under section 2053(a) resulted in the bulk of the deficiency of $ 374,503.47 determined against the estate. Respondent also reduced the reported gross estate by the amount of $ 7,535.38 in connection with the proceeds of the Occidental policy. See also n.5, supra.
On April 11, 1985, respondent issued a notice of liability to Huntington *483 National in the amount of $ 350,179.98. Respondent determined the liability of Huntington National based upon its liability as a transferee of the property of the Estate of Francis M. Ronk, Jr. Respondent's liability determination against Huntington National is based primarily on Huntington's receipt, as trustee of the Huntington National Insurance Trust, of the Occidental policy proceeds in the amount of $ 1,000,176.71. OPINION Petitioner now agrees that its allowable deductions under section 2053(a) are limited to $ 1,480,243.18, as determined by respondent. However, petitioner now argues that the $ 1,000,176.71 proceeds from the Occidental policy were incorrectly included on the estate tax return as part of the gross estate. Petitioner instead claims that the proceeds were not includable in the gross estate under section 2035 because the decedent did not transfer the insurance policy within three years of his death. Section 2035(a) provides generally that the gross estate shall include the value of all property in which the decedent had an interest and had transferred, by trust *484 or otherwise, within three years of his death. Section 2035, as amended by the Tax Reform Act of 1976, and as applicable herein, provides for the inclusion in the gross estate of all property in which the decedent has an interest and which the decedent transfers within three years of the date of his death. This amendment, effective for all transfers occurring after January 1, 1977, dramatically changed prior law in this area. [6]Section 2035, as effective prior to January 1, 1977, provided that transfers made by a decedent "in contemplation of death" were included in the gross estate. Additionally, former section 2035(b) provided a rebuttable presumption that property transferred by a decedent within three years of the date of death was transferred in contemplation of death. The changes as enacted by the Tax Reform Act of 1976 were designed to reduce the substantial litigation concerning this statute by creating a mandatory rule of inclusion of property transferred within three years of death. H. Rept. No. 94-1380, at 12 (1976), 1976-3 C.B. (Vol. 3) 746. See generally American Fletcher National Bank and Trust Co. v. United States,611 F.2d 360 (Ct. Cl. 1979). *485 Where life insurance policies are procured at the instance of the decedent in the name of a trustee within the three-year period and where the premiums are paid by the decedent, directly or indirectly, the gross estate includes the proceeds of such policies. First National Bank of Oregon v. United States,488 F.2d 575, 576 (9th Cir. 1973); Detroit Bank & Trust Co. v. United States,467 F.2d 964 (6th Cir. 1972), cert. denied 410 U.S. 929 (1973); Bel v. United States,452 F.2d 683 (5th Cir. 1971), cert. denied 406 U.S. 919 (1972); Estate of Kurihara v. Commissioner,82 T.C. 51 (1984). Petitioner argues that the decedent never owned *486 either the Transamerica or the Occidental policies, that the decedent could not have transferred the policies since he never owned them, and therefore, the Occidental proceeds were not includable in the gross estate. Petitioner urges that the initial premium paid on the Occidental policy was provided by neither the decedent nor the trustee, but by the unearned premium on the Transamerica policy. The fact that the Transamerica policy, the source of the unearned premium, was originally obtained more than three years before the decedent's death, petitioner contends, takes the case out of section 2035 because the acquisition of the Occidental policy "was not a new disposition of property." Respondent asks the Court to look through the form of the transactions to their substance. Respondent asserts that the decedent transferred insurance as if he had bought the policy and then assigned it to the trustee. Additionally, respondent contends that the Huntington National Insurance Trust was in substance and in reality acting as the decedent's agent in purchasing the policy, and that "the includability of the proceeds of a policy of insurance under section 2035 is based upon the transfer *487 of a contractual right to the proceeds of the policy and not upon the commencement of insurance coverage on the decedent's life." The purpose of section 2035 is to prevent avoidance of Federal estate tax by taxing those transfers of a decedent that are essentially substitutes for testamentary dispositions. United States v. Wells,283 U.S. 102, 116-117 (1931). Whatever incidents of ownership the decedent, Francis M. Ronk, Jr., and the Huntington National Insurance Trust may have possessed in the Transamerica or Occidental policies is of no consequence. The incidents-of-ownership test of section 2042 is wholly irrelevant to a proper application of section 2035 as to what constitutes a "transfer." Bel v. United States, supra,452 F.2d at 691. Under section 2035, we must first determine whether or not a transfer of the Occidental policy occurred within three years of the decedent's date of death. The Supreme Court, in Chase National Bank v. United States,278 U.S. 327, 337 (1929), defined the term "transfer" as follows: Obviously the work "transfer" in the statute [referring to sections 401 and 402 (f) of the Revenue Act of *488 1921, ch. 136, sections 401, 402 (f), 42 Stat. 277, 279 taxing the transfer of insurance proceeds at death], or the privilege which may constitutionally be taxed, cannot be taken in such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another. Sec. 402 (c)[*] taxes transfers made in contemplation of death. It would not, we assume, be seriously argued that its provisions could be evaded by the purchase by a decedent from a third person of property, a savings bank book for example, and its delivery by the seller directly to the intended beneficiary on the purchaser's death, or that the measure off the tax would be the cost and not the value of the proceeds at the time of death. * * * * Section 402 is a predecessor section to section 2035(a). This broad definition of "transfer" is applicable to the facts at hand. The decedent was entitled to and received the premium refund from the Transamerica policy. He directed that refund to *489 the Occidental policy, thus paying the initial premium, and receiving the $ 42.50 balance from that refund. Subsequent premiums in 1978 and 1979 necessary to keep the Occidental policy in effect for the Huntington National Insurance Trust were then paid by the decedent from his personal funds. This clearly a situation where the decedent "beamed" the insurance to the trust and this constitutes a "transfer" of the insurance proceeds within the three-year period. Detroit Bank & Trust Co. v. United States, supra;Bel v. United States, supra.Therefore, to allow petitioner-estate to avoid the applicable estate tax through an unduly technical interpretation of the word "transfer" in section 2035 would undermine the purpose of the statute to tax substitutes for testamentary dispositions. See Estate of Schnack v. Commissioner,848 F.2d 933 (9th Cir. 1988), revg. T.C. Memo. 1986-570. [7]
*490 The fact that the decedent may not have formally acquired and then transferred the ownership rights in the policy is immaterial. Detroit Bank & Trust Co. v. United States, supra,467 F.2d at 967-968. The application for the policy specifically provided that the insurance was not to be in effect until the premium was paid. Therefore, it is clear that the decedent's payment of the premium created the ownership rights in the trustee. Bel v. United States, supra,452 F.2d at 690; Estate of Coleman v. Commissioner,52 T.C. 921, 923 (1969). Had the decedent paid the initial premium on the Occidental policy directly to the insurance company, the proceeds of the policy would clearly have been includable in the decedent's gross estate under section 2035. First National Bank of Oregon v. United States, supra,488 F.2d at 576. [8] It is of no consequence that funds from the unearned premium of the Transamerica policy, otherwise refundable to the decedent, were used by the decedent for the initial premium on the Occidental policy. Since this payment was for the initial premium and since the Huntington National Insurance *491 Trust at that time had only $ 18.75 in assets, it is clear that no insurance policy (i.e., no insurance trust res) would have existed had the premium not been paid by the decedent.
When the decedent is the initiator of the insurance as "part of an integrated transaction arranged and regulated by the decedent," the proceeds of the insurance policies are includable in the gross estate. Estate of Kurihara v. Commissioner, supra,82 T.C. at 63. Thus, here the decedent exercised sufficient control over the purchase and retention of the Transamerica and Occidental policies and his funds were used to purchase the policies so that the technical form of ownership by the trustees can be disregarded. Consequently, the Court can hold that the substance of the transaction constituted a transfer of the Occidental policy by the decedent as of December 14, 1977. See generally Schnack v. Commissioner, supra.See also Priess v. Fisherfolk,535 F. Supp. 1271, 1279 (S.D. Ohio 1982). *492 The thrust of the case centers on the control exercised by the decedent. Estate of Schnack v. Commissioner, supra. Both the Transamerica policy and the Occidental policy were obtained at the instance of the decedent and paid for by the decedent. The decedent himself directly paid the premiums. The decedent himself designated the beneficiary of the insurance policy, either the City National Insurance Trust or the Huntington National Insurance Trust, and designated the beneficiaries of these insurance trusts, his wife and three daughters. In the one instance in 1977 when the decedent tried but failed to change the trustee of the insurance trust (from City National to Huntington National) and tried but failed to change the beneficiary of the Transamerica policy (from the City National Insurance Trust to the Huntington National Insurance Trust), the decedent then canceled the Transamerica policy, caused the annual premium he had just recently paid to be refunded to himself, and then caused that refunded premium to be used to pay the initial premium on the Occidental policy. The process was instituted in order to leave the proceeds of the policy to the beneficiaries *493 of the insurance trust, decedent's wife and daughters. Accordingly, where as here a policy is procured at the behest of the decedent within the statutory period, where premiums are paid by the decedent, where the decedent designated the beneficiaries of the policy, where the policy was procured and ownership designated and designed by the decedent, there is a gift or transfer of a property interest in the policy, i.e., a gift or transfer of those insurance proceeds. First National Bank of Oregon v. United States, supra,488 F.2d at 577; Bel v. United States, supra,452 F.2d at 691. The decedent alone made his wife and children the real beneficiaries of the policy and created in his wife and children all of the contractual rights to the insurance proceeds. These were acts of transfer. Bel v. United States, supra,452 F.2d at 691. The purchase of the life insurance policy was intended to pass the proceeds of the policy at death to the decedent's *494 wife and children. That is the equivalent of a testamentary disposition, the taxation of which is precisely the object of section 2035. First National Bank of Oregon v. United States, supra,488 F.2d at 577. Without the decedent's conception, guidance, and payments, the proceeds of the policy would not have been his wife's and children's. Had the decedent procured the policy on his own life within three years of his death and then assigned the policy to his wife and children, there is no doubt that the policy proceeds would have been included in the gross estate. Estate of Coleman v. Commissioner, supra,52 T.C. at 923. The technical form in which the decedent chose to cloak his actions did not differ from that in any meaningful or substantive way. Judicial sanctioning off this type of device would frustrate the purpose of section 2035, which is to prevent avoidance of Federal estate tax by taxing those transfers by a decedent that are essentially substitutes for testamentary dispositions. See United States v. Wells, supra,283 U.S. at 116-117; Schnack v. Commissioner, supra;First National Bank of Oregon v. United States, supra,488 F.2d at 577. *495 We cannot reduce the reach of the statute or subvert its purpose, as petitioner would have us do. The facts of this case do not differ in any significant way from those in Estate of Kurihara v. Commissioner, supra,82 T.C. at 52. There the taxpayer created an irrevocable trust for his wife and children. Kurihara assigned all his interests in a life insurance policy application to the trust. The trustees applied for the policy and were named owners and beneficiaries to the policy, which Kurihara signed only as the insured. The trust documents stated that the trustees were under no obligation to pay insurance policy premiums nor to notify anyone of nonpayment of premiums. The policy terms specified that the policy did not take effect until the first premium had been paid. 82 T.C. at 52-53. Kurihara provided the funds for payment of the premiums. Despite the fact that a separate trust had been established to retain ownership of the policy and that the premiums were paid by the trust with money supplied by Kurihara, this Court looked to the substance of the transaction, not its form. The Court relied on the fact that "but for" Kurihara's money, the *496 policy would never have been purchased. Kurihara's involvement meant that the trustees did not act "entirely of their own volition." 82 T.C. at 61, citing Estate of Coleman v. Commissioner, supra,52 T.C. at 923. See also Schnack v. Commissioner, supra.
Thus, under the reasoning of Kurihara, here too the proceeds of the policy on the decedent's life are includable in the gross estate. Even though the decedent here took steps to structure separate ownership of the policies by the trusts, those steps do not change the fact that the trusts would never have effected and maintained the policies entirely of their own volition. Accordingly, since the Occidental policy was transferred within three years of the decedent's date of death, [9] at the direction of decedent, the proceeds of the Occidental policy are includable in the gross estate pursuant to section 2035. Petitioner-estate is liable for the resulting Federal estate tax. Petitioner-transferee is also liable since it received property in an amount exceeding the Federal estate tax deficiency. Secs. 6324(a)(2), 6902(a). We have considered petitioner-transferee's burden of *497 proof arguments, but they are not well taken. To reflect the concessions and the above *498 holdings, Decision will be entered under Rule 155 in docket No. 35741-84. Decison will be entered for the respondent in docket No. 20578-85.
Footnotes
1. Respondent has also determined transferee liability against Mrs. Ina Marie Ronk, the decedent's mother, in the amount of $114,164.70 in a notice of liability dated April 11, 1985. Mrs. Ronk also petitioned this Court in the case at docket No. 21433-85. Mrs. Ronk concedes that she received a Certificate of Deposit in the amount of $114,164.70 from her son on November 24, 1980, the date of his death, and that that sum is includable in the decedent's gross estate. In a Stipulation of Settlement filed with this Court, she has agreed to be bound by the outcome of the present case, specifically by the outcome of the case at docket No. 35741-84, i.e., if any estate tax is due she can be held liable as a transferee. ↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect as of the date of the decedent's death, and all "Rule" references are to the Tax Court Rules of Practice and Procedure. ↩
3. City National Bank & Trust Company of Columbus is now known as BancOne of Columbus, N.A. ↩
4. The pertinent provision of the agreement stated: B. The Trustee shall be under no obligation to pay the premiums which may become due and payable under the provisions of any policy of insurance forming a part of the trust estate or to make certain that such premiums are paid by Grantor or others, or to notify any persons of the nonpayment of such premiums, and it shall be under no responsibility or liability of any kind in the event such premiums are not paid, except that it shall apply any dividends received on any policy to the payment of premiums thereon. Upon notice, at any time during the continuance of this trust, that the premiums due upon any policy are in default, or that premiums to become due will not be paid, either by Grantor or by any other person, the Trustee, in its sole discretion, may apply any cash values attributable to any policy to the purchase of paid-up insurance or of extended insurance, or may borrow upon any policy for the payment of premiums due thereon, or may accept cash values of any policy upon its forfeiture. If Grantor becomes totally and permanently disabled, within the meaning of any policy forming part of the trust estate, and, as a result thereof, the payment of premiums, or any of them, shall, during the pendency of such disability, be waived, the Trustee upon receipt of such knowledge, shall promptly notify the insurance company which has issued any policy, and shall take any and all steps necessary to make such waiver of premium provision effective. ↩
5. We note that the City National Insurance Trust remained in existence up to the date of the decedent's death, still holding the other two insurance policies the decedent had originally transferred to that trust. Two of the three Forms 712 (Life Insurance Statement) filed with the estate tax return showed the City National (then BancOne) Insurance Trust as the owner, assignee, and beneficiary of those two policies. The estate initially reported the proceeds of those two policies, but respondent determined they were not includable in the gross estate. ↩
6. We further note that section 424(a) of the Economic Recovery Tax Act of 1981 [ERTA], Pub. L. 97-34, 95 Stat. 317, further changed section 2035. A new section 2035(d) provided that subsection (a) shall generally not apply to the estate of a decedent dying after December 31, 1981. Section 2035(d)↩ itself has subsequently been amended in various respects. 7. Since any appeal in the present case would lie to the United States Court of Appeals for the Sixth Circuit, we need not consider whether or not we agree with the Ninth Circuit's reversal of our Memorandum Opinion. Golsen v. Commissioner,54 T.C. 742, 756-758 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied 404 U.S. 940 (1971). In any event, the facts in Estate of Schnack v. Commissioner,848 F.2d 933↩ (9th Cir. 1988), are wholly distinguishable from the facts in the present case. However, the legal principles discussed therein are simply a distillation of well-established case law of this and other courts. 8. See also Estate of Hass v. Commissioner,T.C. Memo 1986-63↩. 9. As stated above, the premium that activated the Occidental policy was credited, at the decedent's direction, as of December 14, 1977, constituting the transfer. The decedent died on November 24, 1980. This plainly falls within the three-year period. Since this December 14, 1977 date falls within the proscribed three-year period, we need not consider the fact that these transactions were back dated. The Occidental policy was actually applied for in January of 1978. The "Request to Change Life Policy," on which either the decedent or his insurance agent forged or caused to be forged Mr. Stine's signature, was dated February 8, 1978. It was that forged document that requested issuance of the Occidental policy to the Huntington National Insurance Trust as owner and beneficiary of the policy and that requested that the premium on the Transamerica policy, which the decedent had just recently paid directly out of his own funds, be refunded to the decedent. That refunded premium was then used to pay the first Occidental premium, with the remaining balance paid directly to the decedent. ↩